Archibeque v. North Texas State Hospital-Wichita Falls

(comment: 1)

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-02-043-CV

TONYA M. ARCHIBEQUE, INDIVIDUALLY APPELLANT

AND AS HEIR OF JANAE DEVRIES,

DECEASED

V.

NORTH TEXAS STATE HOSPITAL- APPELLEE

WICHITA FALLS CAMPUS, AN 

AGENCY OF DEFENDANT TEXAS 

DEPARTMENT OF MENTAL HEALTH 

AND MENTAL RETARDATION 

----------

FROM THE 30
TH
 
DISTRICT COURT OF WICHITA COUNTY

----------

OPINION

----------

I.  Introduction

Appellant Tonya M. Archibeque, Individually and as heir of Janae Devries, Deceased, appeals from the trial court’s judgment granting appellee’s plea to the jurisdiction and dismissing her wrongful death and survival action.  In her sole issue on appeal, Archibeque contends appellee’s sovereign immunity from suit has been waived under the Texas Tort Claims Act
(footnote: 1) because Devries’s death was the result of the use or misuse of tangible personal property.  Because we conclude that appellee’s immunity from suit has not been waived, we will affirm the trial court’s judgment.

II.  Background Information & Procedural History

Archibeque’s mother, Janae Devries, was a patient at North Texas State Hospital, which is a part of the Texas Department of Mental Health and Mental Retardation.
(footnote: 2)  While at the hospital, Devries allegedly committed suicide by covering her head with a trash bag and tying shoe laces around her neck.  Thereafter, Archibeque filed a wrongful death and survival action,
(footnote: 3) seeking to recover damages from appellee arising from Devries’s death.  Appellee filed a plea to the jurisdiction, alleging that it was sovereignly immune from suit for tort liability because the legislature had not consented to the suit.  The trial court granted the plea, and this appeal followed.  

III.  Standard of Review

A plea to the jurisdiction challenges the trial court’s authority to determine the subject matter of the action.  
Tex. Dep’t of Transp. v. Jones,
 8 S.W.3d 636, 638 (Tex. 1999).  Whether the trial court had subject matter jurisdiction is a question of law that we review de novo.  
Tex. Natural Res. Conservation Comm’n v. IT-Davy,
 74 S.W.3d 849, 855 (Tex. 2002); 
Mogayzel v. Tex. Dep’t of Transp.,
 66 S.W.3d 459, 463 (Tex. App.—Fort Worth 2001, pet. denied).  The plaintiff has the burden of alleging facts that affirmatively establish the trial court’s subject matter jurisdiction.  
Tex. Ass’n of Bus. v. Tex. Air Control Bd.,
 852 S.W.2d 440, 446 (Tex. 1993).  In determining whether jurisdiction exists, we accept the allegations in the pleadings as true and construe them in favor of the pleader.  
Id.; Tex. Dep’t of MHMR v. Lee,
 38 S.W.3d 862, 865 (Tex. App.—Fort Worth 2001, pet. denied).  We must also consider evidence relevant to jurisdiction when it is necessary to resolve the jurisdictional issue raised.  
Bland ISD v. Blue,
 34 S.W.3d 547, 555 (Tex. 2000).  No evidence was presented to the trial court in this case; therefore, we look solely to Archibeque’s pleadings to determine the jurisdictional question.

IV.  Sovereign Immunity From Suit

A.  Use or Misuse of Property

Governmental entities such as appellee are immune from suit unless the legislature has expressly consented to the suit.  
Jones,
 8 S.W.3d at 638; 
Fed. Sign v. Tex. S. Univ.,
 951 S.W.2d 401, 405 (Tex. 1997).  Absent legislative consent to sue a governmental entity, the trial court lacks subject matter jurisdiction over the case.  
Jones,
 8 S.W.3d at 638.  The Texas Tort Claims Act provides a limited waiver of sovereign immunity, allowing suits to be brought against governmental agencies only in certain narrowly-defined circumstances.  
Tex. Dep’t of Criminal Justice v. Miller,
 51 S.W.3d 583, 587 (Tex. 2001); 
see also Dallas County MHMR v. Bossley,
 968 S.W.2d 339, 341 (Tex.) (“[T]he Legislature intended the waiver in the Act to be limited . . . .”), 
cert. denied,
 525 U.S. 1017 (1998).  Mere reference to the Act in a plaintiff’s pleading does not establish the State’s consent to be sued and thus is not enough to confer jurisdiction on the trial court.  
Miller,
 51 S.W.3d at 587.  Rather, “we must look to the terms of the Act to determine the scope of its waiver,” 
Kerrville State Hosp. v. Clark,
 923 S.W.2d 582, 584 (Tex. 1996), and then must determine whether the particular facts alleged in the case before us come within that scope.  
Tex. Natural Res. Conservation Comm’n v. White,
 46 S.W.3d 864, 868 (Tex. 2001); 
Miller,
 51 S.W.3d at 587.

Archibeque contends that she pleaded sufficient facts to show that her claims fall within the Act’s immunity waiver.  She asserts that the Act waives appellee’s immunity from suit as to her claims because her claims are based on appellee’s negligence involving the use or misuse of tangible personal property.  Specifically, Archibeque alleges that appellee was negligent in providing Devries, who had a history of suicidal tendencies, a plastic trash bag and shoe laces, which she used to commit suicide.  Archibeque also alleges that appellee’s employees negligently failed to use a flashlight to monitor Devries during sleeping hours and negligently failed to properly diagnose Devries’s condition and mental status in her chart.  

Section 101.021 of the Act provides that a governmental unit is liable for:

(1)  property damage, personal injury, and death proximately caused by the wrongful act or omission or the negligence of an employee acting within his scope of employment if:

(A)  the property damage, personal injury, or death arises from the operation or use of a motor-driven vehicle or motor-driven equipment; and

(B)  the employee would be personally liable to the claimant according to Texas law; and

(2)  personal injury and death so caused by a condition or use of tangible personal or real property if the governmental unit would, were it a private person, be liable to the claimant according to Texas law.

Tex. Civ. Prac. & Rem. Code Ann. 
§ 101.021 (Vernon 1997).
(footnote: 4)  Only section 101.021(2) is at issue in this case.  

To state a claim under section 101.021(2), the plaintiff must allege that (1) property was used or misused by a governmental employee and (2) the use proximately caused personal injury or death.  
Bossley,
 968 S.W.2d at 343; 
Lee,
 38 S.W.3d at 867; 
Smith v. Tarrant County,
 946 S.W.2d 496, 501 (Tex. App.—Fort Worth 1997, writ denied) (op. on reh’g).  “Use” means “to put or bring into action or service; to employ for or apply to a given purpose.”  
White,
 46 S.W.3d at 869; 
LeLeaux v. Hamshire-Fannett ISD,
 835 S.W.2d 49, 51 (Tex. 1992).  A mere allegation of use by a governmental employee or the involvement of property is insufficient to state a claim for which immunity has been waived under the Act; rather, the use must have proximately caused the injury or death. 
 Bossley,
 968 S.W.2d at 343; 
see also Salcedo v. El Paso Hosp. Dist.,
 659 S.W.2d 30, 32-33 (Tex. 1983);
 Lowe v. Tex. Tech. Univ.,
 540 S.W.2d 297, 299-300 (Tex. 1976) (both construing phrase “personal injury and death so caused by a condition or use of property” as meaning “when proximately caused by the negligence or wrongful act or omission of any officer or employee acting within the scope of his employment or office”).
(footnote: 5)  Although the degree of involvement is difficult for courts to discern in certain cases, the rationale and holdings of supreme court decisions make clear that there must be a close causal relationship between the condition or use of the property and the resulting injury.  
Lee,
 38 S.W.3d at 867.  “Property does not cause injury if it does no more than furnish the condition that makes the injury possible.”  
Bossley,
 968 S.W.2d at 343 (citing
 Union Pump Co. v. Allbritton,
 898 S.W.2d 773, 776 (Tex. 1995)).

In this case, Archibeque asserts that appellee negligently used the trash bag and shoe laces because appellee furnished them to Devries, who had a history of suicidal tendencies, and failed to remove them from her room.  Archibeque does not explain what appellee used the trash bag and shoe laces for, but presumably they were employed for their usual purposes:  to collect trash and tie shoes.  Archibeque does not contend that Devries’s death was caused by either the collection of trash or the tying of her shoes; thus, Archibeque has not alleged that Devries’s death was proximately caused by appellee’s use or misuse of the trash bag and shoe laces.  
See Tex. Dep’t of Criminal Justice v. Diller,
 No. 12-02-003-CV, 2002 WL 31680829, at *3 (Tex. App.—Tyler Nov. 27, 2002, pet. filed) (holding that prison employees’ use of plastic mesh bag to transport suicidal inmate’s clothing, and failure to remove bag from inmate’s cell, was not proximate cause of inmate’s subsequent suicide by hanging with the bag); 
see also DART v. Whitley,
 104 S.W.3d 540, 542-43 (Tex. 2003) (holding that DART bus driver’s ejection of handicapped passenger from bus and failure to return for him as promised, so that he was severely beaten by another passenger who had threatened him in front of driver, was not use of motor vehicle under section 101.021(1) that proximately caused passenger’s injuries).

The mere presence of the trash bag and shoe laces in Devries’s room did no more than furnish the condition that made her death possible; it did not kill Devries or cause her to engage in suicidal conduct.  Although 
Devries’s
 use of the trash bag and shoe laces were part of a tragic sequence of events that ended in her death, appellee’s alleged use of these items was too attenuated from her death to be said to have caused it.  
See Bossley,
 968 S.W.2d at 343 (holding that unlocked doors at treatment facility, which permitted patient to escape and later commit suicide, were too attenuated from death to have caused it); 
Lee,
 38 S.W.3d at 868 (holding that unlocked doors, which permitted assailant to enter hypersexual and promiscuous patient’s room and sexually assault her, were too attenuated from patient’s injuries to have caused them); 
Bush v. Tex. Dep’t of Protective & Regulatory Servs.,
 983 S.W.2d 366, 369 (Tex. App.—Fort Worth 1998, pet. denied) (holding that TDPRS’s alleged misuse of intake questionnaires and forms, by stating thereon that parental abuse allegations involving child were unfounded, was too far removed from child’s later death from abuse to have caused it).

The cases on which Archibeque relies are not on point.  They involve either the alleged misuse of medical equipment
(footnote: 6) or the provision of property that lacked an integral safety component,
(footnote: 7) and their precedential value is limited to their particular circumstances.
(footnote: 8)  Archibeque does not contend that appellee misused medical equipment or that the trash bag and shoe laces in question lacked an integral safety component.
(footnote: 9)
 The true substance of Archibeque’s complaint is that Devries’s death was caused, not by appellee’s use of the trash bag and shoelaces, but by the failure of appellee’s staff to exercise sufficient care in monitoring Devries due to her suicidal history.  This alleged failure does not fall within the Act’s limited waiver of immunity.  
See Lacy v. Rusk State Hosp.,
 31 S.W.3d 625, 630 (Tex. App.—Tyler 2000, no pet.); 
San Antonio State Hosp. v. Koehler,
 981 S.W.2d 32, 37 (Tex. App.—San Antonio 1998, pet. denied) (both holding that negligence in care or supervision of patient is not actionable under the Act).

B.  Nonuse of Property

Likewise, Archibeque’s allegations that appellee failed to use appropriate flashlights to adequately check on Devries during sleeping hours; negligently failed to note in Devries’s chart her presence during room checks; and negligently failed to properly diagnose Devries’s condition and mental status in her chart do not state a claim under the Act for two reasons.  First, these averments are simply allegations of the nonuse of property:  the failure to use a flashlight and Devries’s medical chart.  The nonuse of property cannot support a claim under the Act.  
White,
 46 S.W.3d at 869-70; 
see also Kassen v. Hatley,
 887 S.W.2d 4, 14 (Tex. 1994) (holding that nonuse of available drugs during emergency medical treatment is not a use of tangible personal property that triggers a sovereign immunity waiver); 
Gainesville Mem’l Hosp. v. Tomlinson,
 48 S.W.3d 511, 514 (Tex. App.—Fort Worth 2001, pet. denied) (holding that aide’s alleged failure to use intercom was nonuse of property for which immunity was not waived).

Second, medical information and the paper on which it may or may not be written is not tangible property under the Act.  
Kassen,
 887 S.W.2d at 14; 
Univ. of Tex. Med. Branch v. York,
 871 S.W.2d 175, 175-76 (Tex. 1994).  This is true whether or not the information and paper were properly used.  
York,
 871 S.W.2d at 175-76; 
accord Bush,
 983 S.W.2d at 369 (applying 
York
 to allegation that TDPRS had failed to properly use paper intake forms and questionnaires).  The two cases to the contrary that Archibeque cites have been disapproved or reversed by the supreme court.  
See Tex. Dep’t of MHMR v. Petty ex rel. Kauffman,
 848 S.W.2d 680 (Tex. 1992) (plurality op.), 
disapproved by York,
 871 S.W.2d at 179; 
State v. San Miguel,
 981 S.W.2d 342 (Tex. App.—Houston [14
th
 Dist.] 1998) (op. on reh’g), 
rev’d,
 2 S.W.3d 249 (Tex. 1999).  Accordingly, Archibeque’s allegations that appellee failed to use Devries’s chart or failed to properly record pertinent information therein do not state a claim under the Act.

V.  Conclusion

For all of the foregoing reasons, we hold that Archibeque failed to allege facts that affirmatively established the trial court’s subject matter jurisdiction over her suit.  Accordingly, the trial court properly granted appellee’s plea to the jurisdiction and dismissed Archibeque’s claims.  We overrule Archibeque’s sole point on appeal and affirm the trial court’s judgment.

JOHN CAYCE

CHIEF JUSTICE

PANEL B: CAYCE, C.J.; GARDNER and WALKER, JJ.

WALKER, J. filed a dissenting opinion.

DELIVERED: August 14, 2003

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-02-043-CV

TONYA M. ARCHIBEQUE, INDIVIDUALLY APPELLANT

AND AS HEIR OF JANAE DEVRIES,

DECEASED 

V.

NORTH TEXAS STATE HOSPITAL-   APPELLEE

WICHITA FALLS CAMPUS, AN 

AGENCY OF TEXAS 

DEPARTMENT OF MENTAL HEALTH 

AND MENTAL RETARDATION 

------------

FROM THE 30
TH
 DISTRICT COURT OF WICHITA COUNTY

------------

DISSENTING OPINION

------------

I.  Introduction

I respectfully dissent.  I cannot agree with the majority’s proximate cause analysis for two reasons.  First, I cannot agree with the majority’s conclusion that Tonya Archibeque failed to properly plead proximate cause.  Second, I cannot agree with the majority’s  holding that North Texas State Hospital’s use of the trash bag  in Janae Devries’s room did no more than furnish the condition that made her death possible and was too attenuated from Devries’s death to be said to have caused it.  I would hold that Archibeque pleaded a waiver of sovereign immunity, reverse the trial court’s judgment, and remand this case to the trial court.

II.  Proximate Cause Under Section 101.021(2)

The Texas Tort Claims Act waives a governmental unit’s sovereign immunity for personal injury or death caused by use of tangible personal property if the governmental unit would, if it were a private person, be liable to the claimant according to Texas law.
(footnote: 10)  Accepting the allegations in 
Archibeque’s pleadings as true and construing them in her favor, as we must, she pleaded that the Hospital negligently used a trash bag by placing it in a suicidal patient’s room for the collection of trash.
(footnote: 11)  A trash bag is tangible personal property.
(footnote: 12)  Placing a trash bag in a patient’s room is “use” of the trash bag.
(footnote: 13)  A private mental hospital would be liable to Archibeque according to Texas law for negligently using an object by placing it in her suicidal mother’s room when the object could foreseeably be utilized to effectuate a suicide.
(footnote: 14)  Therefore, the only question remaining is whether, for purposes of triggering a waiver of sovereign immunity under the Texas Tort Claims Act, Devries’s death was 
“caused
 by a condition or use of tangible personal or real property,”
(footnote: 15) i.e., was proximately caused by the Hospital’s use of the trash bag.

The majority first holds that Archibeque failed to properly plead causation.  Specifically, the majority claims Archibeque did not plead that “Devries’s death was caused by either the collection of trash or the tying of her shoes” so that “Archibeque has not alleged that Devries’s death was proximately caused by appellee’s use or misuse of the trash bag and shoe laces.”  I cannot agree.  Archibeque pleaded that the Hospital negligently “furnished trashbags and shoestrings, tangible property, to the Decedent who had a history of suicidal tendencies,” that the Hospital “[n]egligently failed to remove shoestrings and trashbags . . . from [Devries’s] room,” and that “the foregoing acts and omissions . . . were a direct and proximate cause of the injuries and damages sustained by Decedent and Plaintiff.”  In my view, accepting the allegations in Archibeque’s pleadings as true and construing those allegations in her favor, she pleaded that the Hospital’s negligent use of tangible personal property, i.e., a trash bag in her mother’s hospital room, proximately caused her mother’s death.
(footnote: 16)  I cannot agree with the majority’s conclusion that Archibeque was required to allege the Hospital’s physical collection of trash or tying of shoes caused Devries’s death in order to properly plead proximate cause under the tort claims act.

The majority next holds that the Hospital’s use of the trash bag did not cause Devries’s death; it only furnished the condition that made her death possible.  Again, I cannot agree.  The causation standard embodied in section 101.021(2) is proximate cause.
(footnote: 17)  Proximate cause consists of cause in fact and foreseeability.
(footnote: 18)  The test for foreseeability is whether a person of ordinary intelligence would have anticipated the danger his or her negligence creates.
(footnote: 19)  Cause in fact means that the defendant's act or omission was a substantial factor in bringing about the injury that would not otherwise have occurred.
(footnote: 20)  Cause in fact is not shown if the defendant's negligence did no more than furnish a condition that made the injury possible.
(footnote: 21)  
The evidence “must go further and show that such negligence was the proximate, and not the remote, cause of the resulting injuries” and “justify the conclusion that such injury was the natural and probable result thereof.”
(footnote: 22)
 At some point in the causal chain, however, the defendant's conduct may be too remotely connected with the plaintiff's injury to constitute legal causation.
(footnote: 23)  In defining the limits of legal causation, the courts have explained:

[T]he law does not hold one legally responsible for the remote results of his wrongful acts and therefore a line must be drawn between immediate and remote causes.  The doctrine of “proximate cause” is employed to determine and fix this line and “is the result of an effort by the courts to avoid, as far as possible the metaphysical and philosophical niceties in the age-old discussion of causation, and to lay down a rule of general application which will, as nearly as may be done by a general rule, apply a practical test, the test of common experience, to human conduct when determining legal rights and legal liability.”
(footnote: 24)
Courts applying this too-remote-to-constitute legal causation principle typically base the remoteness determination on a time gap between the negligence and the injury, on the existence of intervening events, or on intentional third-party conduct.  A review of proximate-cause case law demonstrates that at least one of these three distancing factors is present in every instance where the courts have concluded that the plaintiff’s injuries were so remote, so attenuated, from the defendant’s wrongful conduct that as a matter of law the defendant could not be held responsible for the injuries.

Based on the time gap, intervening events, and intentional conduct by a third party factors, the supreme court in 
Dallas Area Rapid Transit v. Whitley
 held no legal causation existed as a matter of law.
(footnote: 25)  Whitley was assaulted and threatened with physical violence by a woman on a city bus.
(footnote: 26) Observing the potentially violent situation, the bus driver ordered Whitley to exit the bus, saying that he would come back for him in a few minutes.  The woman who had threatened to kill Whitley exited the bus herself shortly thereafter, went directly home, recruited her son and his friends to assault Whitley, and returned to the place the bus had left Whitley.  The woman and her recruits then severely beat Whitley.
(footnote: 27)  The supreme court held that the woman and her accomplices caused Whitley’s injuries, not the use of the bus.
(footnote: 28)
 Based on the time gap factor, the supreme court in 
Union Pump Co. v. Allbritton
 held that a pump explosion was not the legal cause of the plaintiff’s subsequent fall off a pipe rack:

Even if the pump fire were in some sense a “philosophic” or “but for” cause of Allbritton's injuries, the forces generated by the fire had come to rest when she fell off the pipe rack.  The fire had been extinguished, and Allbritton was walking away from the scene.  Viewing the evidence in the light most favorable to Allbritton, the pump fire did no more than create the condition that made Allbritton's injuries possible.  We conclude that the circumstances surrounding her injuries are too remotely connected with Union Pump's conduct or pump to constitute a legal cause of her injuries.
(footnote: 29)   

Based on the time gap and intervening events factors, in 
Dallas County Mental Health & Mental Retardation v. Bossley,
 the supreme court held that a mental hospital’s use of tangible property—unlocking the hospital doors—and the doors’ condition—being unlocked—were both too remote to constitute the legal cause of a patient’s death when the patient escaped through the unlocked doors, ran half a mile, attempted to hitchhike on both sides of a freeway, and leapt in front of an oncoming truck as he was about to be apprehended.
(footnote: 30)  The supreme court explained that although the patient’s escape through the unlocked doors was part of a sequence of events that ended in his suicide, the use and condition of the doors were too attenuated from the patient’s death to be said to have caused it.

Based on the time gap factor, the supreme court in 
Bell v. Campbell
 held that a wreck that left a trailer partially on the highway was as a matter of law too attenuated to be a proximate cause of a subsequent accident where a drunk driver hit the trailer and three passing motorists who stopped to help move it off the highway.
(footnote: 31)  The supreme court explained:

All acts and omissions charged against respondents [the individuals in the first wreck] had run their course and were complete.  Their negligence did not actively contribute in any way to the injuries involved in this suit.  It simply created a condition which attracted Payton, Bell and Bransford to the scene, where they were injured by a third party.
(footnote: 32)

Based on the time gap, intervening events, and intentional conduct by a third party factors, in 
Texas Department of Mental Health & Mental Retardation v. Lee,
 this court held that the Wichita Falls State Hospital’s use of an interior door by leaving it unlocked and the condition of another door leading from the men’s wing to the women’s wing, having no locking device, were too attenuated from Lee’s sexual assault by an HIV-positive male patient to constitute the legal cause of Lee’s injuries under section 101.021(2).
(footnote: 33)  We held that “[t]he true substance of Lee’s complaint is that the sexual assault was caused, not by the condition or use of the hospital doors, but by the failure of the hospital staff to protect her from her assailant when they knew that [because of her illness] she was hypersexual.”
(footnote: 34)
 Based on the time gap, intervening events, and intentional conduct by a third party factors, in 
San Antonio State Hospital v. Koehler
, the appellate court held that no legal causation existed as a matter of law when a patient escaped from a mental hospital, accompanied by a male acquaintance, through a hole in the fence surrounding the hospital and the acquaintance later sexually assaulted the patient at a boarding house.
(footnote: 35)  The court explained that the intervening criminal act of the acquaintance attenuated the causal nexus between the hole in hospital's fence and the patient’s injuries.
(footnote: 36)
 Here, taking as true Archibeque’s pleading that the Hospital furnished the trash bag to Devries, who had a history of suicidal tendencies, by placing it in Devries’s hospital room and that while Devries was a patient of the Hospital she sustained a fatal injury by placing the trash bag over her head, there is no time gap, there are no intervening events, and there are no intentional acts by third parties between the Hospital’s alleged negligent use of the trash bag and Devries’s injuries.  The Hospital allegedly negligently used the trash bag for the collection of trash in Devries’s hospital room; while the trash bag was being used, Devries, a suicidal patient, killed herself with it.  Unlike 
Union Pump
 and 
Bell
, the negligently caused event was not over when the plaintiff’s injuries occurred.  Unlike 
Bossley
 and 
Koehler
, 
Devries did not escape the Hospital’s custody, run away, and then leap in front of an oncoming truck in Bossley’s case or become the victim of a sexual assault in Koehler’s case.  Devries was at the Hospital and in the Hospital’s care when she died.  Unlike 
Whitley
 and 
Lee
, the substance of Archibeque’s complaint is not the failure to protect Devries from a third party.  Archibeque’s complaint is that the Hospital negligently used a trash bag in the room of a suicidal patient.

The Hospital’s alleged negligent use of a trash bag here is simply not so remote or so attenuated from Devries’s death that as a matter of law it cannot constitute a proximate cause of Devries’s death.  None of the 
Whitley
, 
Bossley
, 
Union Pump
, 
Bell
, 
Koehler
, or 
Lee
 too-remote-to-constitute legal causation facts are present here.
(footnote: 37)  No time gap exists between the Hospital’s alleged negligence and Devries’s injuries.  No intervening events occurred between the Hospital’s alleged negligence and Devries’s injuries.  No intentional acts occurred by a third party between the Hospital’s alleged negligence and Devries’s injuries.  No attenuating facts exist at all on the record before us.  A causal nexus exists between the Hospital’s use of the trash bag and Devries’s death.  A person of ordinary intelligence would have anticipated the danger of placing a trash bag in the room of a suicidal patient and the Hospital’s use of the trash bag was a substantial factor in bringing about Devries’s death that would not otherwise have occurred.  Thus, I cannot agree with the majority’s conclusion that the Hospital’s use of the trash bag in Devries’s room was as a matter of law too attenuated from Devries’s death to be said to have caused it.

III.  Conclusion

I would hold that Archibeque has pleaded a cause of action against the Hospital falling within section 101.021(2)’s waiver of immunity.  I therefore would sustain Archibeque’s sole issue, reverse the trial court’s judgment, and remand this case to the trial court.

SUE WALKER

JUSTICE

DELIVERED: August 14, 2003

FOOTNOTES
1:
Tex. Civ. Prac. & Rem. Code Ann. 
§§ 101.001-.109 (Vernon 1997 & Supp. 2003).

2:
Tex. Health & Safety Code Ann. 
§ 532.001(a), (b)(8) (Vernon 2003).  We refer to North Texas State Hospital and the Texas Department of Mental Health and Mental Retardation collectively as appellee.

3:
See
 
Tex. Civ. Prac. & Rem. Code Ann. 
§§ 71.002-.004, 71.021 (Vernon 1997).

4:
Although this provision speaks in terms of waiver of immunity from liability, the Act also waives immunity from suit to the same extent.  
Id.
 § 101.025(a); 
Miller,
 51 S.W.3d at 587.

5:
Salcedo
 and 
Lowe
 have been limited on other grounds, 
see Bossley,
 968 S.W.2d at 342-43, but not based on their construction of this phrase.

6:
See Salcedo,
 659 S.W.2d at 32-33 (holding immunity waived for claim that governmental unit negligently used electrocardiograph machine); 
Baston v. City of Port Isabel,
 49 S.W.3d 425, 428-29 (Tex. App.—Corpus Christi 2001, pet. denied) (following 
Salcedo
).

7:
See Robinson v. Cent. Tex. MHMR Ctr.,
 780 S.W.2d 169, 171 (Tex. 1989) (holding immunity waived for claim that epileptic, mentally challenged patient was allowed to swim without a life preserver); 
Lowe,
 540 S.W.2d at  300 (holding immunity waived for football player’s claim that coach required him to play without knee brace); 
Overton Mem’l Hosp. v. McGuire,
 518 S.W.2d 528, 529 (Tex. 1975) (holding immunity waived for claim the patient was provided hospital bed without bed rails); 
see also McBride v. TDCJ-ID,
 964 S.W.2d 18, 22 (Tex. App.—Tyler 1997, no pet.) (following 
Lowe
 and holding immunity waived for inmate’s claim that provision of barrel with no handles caused his injuries).

8:
Salcedo
 has been limited to its facts.  
See Bossley,
 968 S.W.2d at 342.  
Robinson, Lowe, 
and 
McGuire
 “represent perhaps the outer bounds of what [the supreme court has] defined as use of tangible property,” and their precedential value is “limited to claims in which a plaintiff alleges that a state actor has provided property that lacks an integral safety component and that the lack of this integral component led to the plaintiff’s injuries.”  
Clark,
 923 S.W.2d at 585.

9:
We decline to follow 
San Antonio State Hospital v. Cowan,
 
75 S.W.3d 19 (Tex. App.—San Antonio 2001, pet. granted).  In that case, the San Antonio Court of Appeals held that hospital employees “misused” a suicidal patient’s suspenders and walker, which he used to commit suicide, by either not taking them from the patient upon his admission to the hospital or later allowing him to use them.  
Id.
 at 23.  The court further held that the negligent provision of the walker and suspenders to the patient proximately caused his suicide.  
Id.
  
Cowan
’s reasoning is based primarily on 
McGuire,
 which is inapposite to 
Cowan
’s facts, because there was no allegation in 
Cowan
 that the suspenders and walker lacked an integral safety component.  
See id.
 at 20-21; 
supra
 n.8.

10:
Tex. Civ. Prac. & Rem. Code Ann. 
§ 101.021(2) (Vernon 1997).

11:
See Tex. Ass’n of Bus. v. Tex. Air Control Bd.
, 852 S.W.2d 440, 446 (Tex. 1993) (instructing, “[w]hen reviewing a trial court order dismissing a cause for want of jurisdiction, Texas appellate courts ‘construe the pleadings in favor of the plaintiff and look to the pleader’s intent’”).

12:
Univ. of Tex. Med. Branch v. York
, 871 S.W.2d 175, 178 (Tex. 1994) (holding that “tangible personal property” means something that has a corporeal, concrete, and palpable existence).   

13:
DART v. Whitley
, 104 S.W.3d 540, 542 (Tex. 2003) (defining “use” under section 101.021(2) as to “bring into action or service; to employ for or apply to a given purpose”).

14:
See, e.g., Mounts v. St. David's Pavilion
, 957 S.W.2d 661, 663 
 
(Tex. App.—Austin 1997, no pet.) (recognizing that a psychiatric hospital is under a duty to exercise reasonable care to safeguard the patient from any known or reasonably apprehensible danger from herself and to exercise such reasonable care for her safety as her mental and physical condition, if known, may require and upholding jury finding that hospital used reasonable care in selection of shower curtain rod in patient’s room); 
Harris Hosp. v. Pope
, 520 S.W.2d 813, 815 (Tex. Civ. App.—Fort Worth 1975, writ ref’d n.r.e.) (recognizing psychiatric hospital’s duty to patient).

15:
Tex. Civ. Prac. & Rem. Code Ann
. § 101.021(2) (emphasis added).

16:
As correctly noted by the majority, no evidence was presented to the trial court at the hearing on the Hospital’s plea to the jurisdiction.

17:
Dallas County MHMR v. Bossley
, 968 S.W.2d 339, 343 (Tex.) (“Section 101.021(2) requires that for immunity to be waived, personal injury or death must be 
proximately
 caused by the condition or use of tangible property.”) (emphasis added), 
cert. denied
, 525 U.S. 1017 (1998); 
Michael v. Travis County Hous. Auth.
, 995 S.W.2d 909, 912-15 (Tex. App.—Austin 1999, no pet.) (noting causation standard under section 101.021(2) is proximate cause, not direct cause, immediate cause, or sole cause).

18:
Union Pump Co. v. Allbritton
, 898 S.W.2d 773, 775 (Tex. 1995) (citing 
Travis v. City of Mesquite
, 830 S.W.2d 94, 98 (Tex. 1992) (op. on reh’g); 
Mo. Pac. R.R. Co. v. Am. Statesman
, 552 S.W.2d 99, 103 (Tex. 1977)). 

19:
S.W. Key Program, Inc. v. Gil-Perez
, 81 S.W.3d 269, 274 (Tex. 2002).

20:
Id
.

21:
Bell v. Campbell
, 434 S.W.2d 117, 120 (Tex. 1968).

22:
Carey v. Pure Distrib. Corp.
, 133 Tex. 31, 124 S.W.2d 847, 849 (1939).

23:
Union Pump Co.
, 898 S.W.2d at 775.

24:
Id. 
(quoting 
Springall v. Fredericksburg Hosp. & Clinic
, 225 S.W.2d 232, 235 (Tex. Civ. App.—San Antonio 1949, no writ)).

25:
104 S.W.3d at 542-43.

26:
Id.
 at 541.

27:
Id.
 at 542.

28:
Id
. at 543.

29:
898 S.W.2d at 776.

30:
Bossley
, 968 S.W.2d at 343.

31:
434 S.W.2d at 122.

32:
Id.

33:
38 S.W.3d 862, 868 (Tex. App.—Fort Worth 2001, pet. denied).

34:
Id
. at 868.

35:
981 S.W.2d 32, 36-37 (Tex. App.—San Antonio 1998, pet. denied); 
see also
 
Bonham v. Tex. Dep’t of Criminal Justice
, 101 S.W.3d 153, 159 (Tex. App.—Austin 2003, no pet.) (recognizing guard's sexual assault was intervening intentional act rendering layout of facility alleged to be condition of property too remote to be cause in fact of guard’s assault).

36:
Koehler
, 981 S.W.2d at 37.

37:
I have located no tort claims act case holding, in the absence of attenuating facts, that nonetheless as a matter of law the defendant’s negligence is too remote from the plaintiff’s injuries to constitute legal causation and merely provided the condition that allowed the injuries to occur.

COMMENTS AND ANNOTATIONS
Comment 1:
Majority Opinion by Chief Justice Cayce; Dissenting Opinion by Justice Walker.