**Opinion issued January 9, 2025**



In The

# Court of Appeals

For The

# First District of Texas

————————————————

## NO. 01-24-00331-CV

————————————————

**HARRIS COUNTY, Appellant**

**V.**

**CYNTHIA MCFARLAND, Appellee**

---

**On Appeal from the 152nd District Court**
**Harris County, Texas**
**Trial Court Case No. 2022-57714**

---

## MEMORANDUM OPINION

Harris County appeals from the trial court's denial of its plea to the jurisdiction in a premises liability suit filed by Cynthia McFarland after she tripped and fell over a floor mat while entering a Harris County courthouse in Houston, Texas. In one issue, Harris County argues the trial court erred in denying its plea

to the jurisdiction because "the plea and its exhibits conclusively negated jurisdiction and McFarland's live petition, response, and exhibits failed to raise a disputed material fact."

We reverse and render.

## Background

McFarland alleged that on September 29, 2020, she "tripped on, and fell as a result of, an unsecured mat" at the entry of a Harris County courthouse. The surveillance video maintained by Harris County shows McFarland walking toward and entering the courthouse on the day of the fall. McFarland is seen wearing open-toed sandals and sunglasses. She is holding her cellphone in one hand and a disabled parking placard in the other hand and she trips over a floor mat and falls. Mariana Carpelino, a clerk at the courthouse who went to the scene immediately after McFarland's fall, stated that McFarland told her she did not need an ambulance and that "she felt okay, did not feel dizzy, and stated that her flip flop got caught on the carpet which caused the fall."

McFarland sued Harris County under the Texas Tort Claims Act ("TTCA"),[1] alleging she had sustained "serious, debilitating injuries" because of her fall. She asserted negligence, premises liability, and negligent hiring and training claims against Harris County. Harris County filed a general denial asserting

---

[1] *See* TEX. CIV. PRAC. & REM. CODE § 101.001 et. seq.

2

governmental immunity and other affirmative defenses. It later filed a "Plea to the Jurisdiction and, in the Alternative, No-Evidence and Traditional Hybrid Motion for Summary Judgment," arguing that McFarland had not established that Harris County had waived immunity under the TTCA.

In its Plea, Harris County argued that McFarland had not satisfied her burden to establish jurisdiction by affirmatively pleading Harris County waived immunity under the TTCA.[2]  Harris County averred that McFarland could not establish the elements required under a licensee standard in a premises liability action because:

- "The wet-area floor mat did not create an unreasonable risk of harm to [McFarland], and was in fact intended to protect patrons from slipping in wet conditions."

- "Harris County did not have actual knowledge of the purported dangerousness of the floor mat."

- "Plaintiff has not proven that she did not actually know of 'the condition.'"

- "Harris County exercised ordinary care to protect Plaintiff from danger" and

- "Harris County's failure was not a proximate cause of Plaintiff's injury."

In support of its Plea, Harris County attached Carpelino's affidavit, which stated in relevant part:

---

[2]     Because the summary judgment motions were not ruled on and are not pertinent to this appeal, we do not address them.

3

The mat that McFarland tripped on is a mat that was placed by Harris County in the entrance of the building to prevent people from slipping due to wet conditions in inclement weather and other situations where patrons unintentional[ly] track water into the building. The mat was the proper size for the entrance and laid flat against the surface of the floor underneath. Additionally, the mat in the entryway is thick, heavy, and difficult to lift—it was designed for the purpose for which it was implemented on September 29, 2020.

She continued:

The entryway mat that [McFarland] tripped on was clearly visible and was a contrasting color from the floor. Patrons without eyesight disabilities, who are paying attention to their surroundings, should invariably be able to see the entryway mat. To give additional notice of the mat's presence would be non-sensical and likely create confusion. . . . [T]he mat served to protect entering patrons from dangerous wet conditions.

Finally, she testified:

McFarland's fall was not caused by Harris County—it was caused by McFarland misstepping and catching a corner of the entryway mat between her foot and flip flop. Harris County placed the mat to ensure safety, and there was no failure on Harris County's behalf in [McFarland's] unfortunate misstep.

Carpelino testified that she had worked more than 17,000 hours in the courthouse[3] and was not aware of any other incident regarding the entryway mat.

Harris County's surveillance video that captured McFarland's fall also was attached to the Plea. The five-minute video shows that twenty-one people including McFarland crossed the mat to enter the courthouse that morning,

---

[3] Carpelino testified that at the time of the accident, she was training to be the administrative clerk for a justice of the peace court at the courthouse.

4

including an individual with a cane, and no one else tripped, fell, or had any other issues with the mat.

McFarland filed an objection and response to the Plea, arguing the Plea referred only to her Original Petition, rather than the live petition on file, and therefore was "moot and inapplicable." She further argued that the Plea should be denied because (1) it did not "address or disprove Plaintiff's live Petition that meets the 'fair notice' standard," (2) Harris County did not "conclusively negat[e] the existence of subject matter jurisdiction," and (3) Harris County's evidence in its Plea was contradicted by McFarland's evidence. McFarland attached to her response a photo of a previous fall by an unidentified person at another courthouse (Exhibit A). In addition, she attached photos identified as "Prior Dangerous Mat Conditions" purportedly reported to Harris County (Exhibit C); "Identical Dangerous Mat Condition" in the present case (Exhibit D); "alternative mats" purportedly owned by Harris County (Exhibit E); and "alternative placement of mats" by Harris County (Exhibit E). She also attached the surveillance video of her fall (Exhibit B); a typed incident report of her fall (Exhibit G); a handwritten incident report of her fall (Exhibit H); Harris County's claims file for the incident (Exhibit I); a supplemental interrogatory answer by McFarland (Exhibit J); Carpelino's affidavit (Exhibit K); and a printout of court settings in the case (Exhibit L).

In her response, McFarland argued there was a "hazardous condition" at the courthouse, which she identified as: "the unsecured tip [of the mat] that created an unreasonable risk of harm by creating a tripping hazard when it was allowed to rise . . . the tip of the mat was left unsecured, which allowed it to rise."[4] McFarland argued that Carpelino's affidavit did not address the tip of the mat and

> falsely states that the portion that [McFarland] tripped on was a part of the mat that was of a different color from the white portion of the floor beneath, however, the surveillance makes clear that the floor was actually bordered with black tile, and it was the black tile that the tip of the mat was placed upon[.]

McFarland stated there was "no form of security affixed to the mat" and that such failure was "notedly unreasonable, given that [the mat] was placed by [Harris County] on top of black tile flooring at the base of its entryways."

McFarland further argued that Harris County had not conclusively negated its actual knowledge of the condition. Attached to her response was a photo which she claimed had been lifted "from [Harris County's] surveillance video of another prior injury-producing incident at [Harris County's] premise, who tripped on the same type of mat tip that was allowed to rise." The video reflecting the other

---

4    The insurance claim note attached to McFarland's response does not indicate the tip of the rug was raised before she tripped. Rather, it states that, pursuant to the video footage:

> There is a black mat on the floor between the automated doors & her right foot is just over the edge of it, her left foot is positioned forward/ahead of her right foot & as she moves her right foot forward her right shoe catches the tip of the mat, it rises & she trips and fall[s] face forward.

alleged fall is not part of the record and there is no other information about the other alleged incident attached to McFarland's response.

McFarland argued that Carpelino's affidavit failed "to address the lack of warning or making the condition safe," and that while her affidavit stated that the mat was intended to prevent "slipping," it did not "address any safety measures to prevent *tripping*." (Emphasis in original.) McFarland claimed it was irrelevant that Carpelino had never heard of any prior incidents at the courthouse because she was "a new hire who was actually still in training at the time of the incident, having served zero prior hours in the position of a person who would be fit to receive such information." McFarland argued that Carpelino "in fact, did not and would not have received [notice of] any prior incidents because she was not at any related premises, and even if she were, the incidents were not being sent to her because she was unqualified." According to McFarland, the placements, colors, and uses of mats

> "*placed by Harris County*" *at one or more buildings owned by Harris County* make clear that the availability to make the mat reasonably safe was in fact, possible (whether it would be through a different color mat, placed fully on top of a different color floor, or placed in a different area)—not only was [Harris County] able to do so in [McFarland's] case, it even knew how such could be done, yet it failed to do so.

(Emphasis in original.) Finally, McFarland argued that her:

> trip and fall incident was foreseeable by [Harris County], who received one or more prior reports of other invitees having incident-

7

producing trip-and-falls on tips of mats placed by [Harris County] in the same means and manner as [Harris County] had it on the Premise in [McFarland's] case, resulting in her identical trip, fall, and serious injuries.

In support, McFarland attached what she purported to be photos of "various mat placements, colors, and uses of mats" placed by Harris County "*at one or more various buildings owned by Harris County.*"[5]  (Emphasis in original.)

After Harris County filed its Plea but prior to the Plea's submission date, McFarland filed a First Amended Petition and subsequently, a Second Amended Petition, where she pleaded only a premises liability cause of action and alleged Harris County repeatedly had used

black entryway mats bearing thin, black tips/trimmings/bordering of a contrasting material from the remainder of the black carpeted-like features of the mats, which rise and are placed on top of black tile flooring of premises owned by [Harris County], creating an unreasonable hazard of which [Harris County] has been ongoingly aware through prior reports. This has resulted in past tripping hazards of which [Harris County] had actual knowledge prior to [McFarland] tripping in the exact same manner and on the exact same type of black tips/trimmings/bordering of the black mat affixed on top of black tile flooring, resulting in her severe injuries.

The Second Amended Petition alleged Harris County

had actual knowledge of the hazardous walkway of the Premise and the mat's rising tip/edges, as at least one or more similar incidents occurred, just as the one in this case (involving a licensee on [Harris

---

[5]  The pictures in the appellate record are black and white.  And there is no indication where, when, or by whom they were taken.  Nor is there evidence of any prior reports involving any mats or injuries at the courthouse where McFarland fell.

8

County's] personal property that had a black mat with black thinner borders at the entryway that was placed by [Harris County] on top of black tile flooring and where the tip also raised, causing one or more other invitees to trip, fall, and sustain serious injuries).

The Second Amended Petition alleged that Harris County's acts or omissions "constituted willful, wanton act[s] and/or gross negligence."

After McFarland filed her Second Amended Petition, Harris County filed a reply in support of its Plea. Harris County objected to the photo attached to McFarland's response (Exhibit A) because the photo of the purported fall by another individual appeared to be from a different location and there was "no contextual background for the photo." In addition, Harris County objected to the photos of other floor mats "in and around different buildings" attached to McFarland's response (Exhibits E and F) as irrelevant and lacking predicate and contextual background. Harris County advanced other objections to McFarland's remaining evidence and argued that McFarland had not raised a fact issue on the "jurisdictional question."

On the day Harris County's Plea was set for submission, McFarland filed a Third Amended Petition that referred to Harris County's "repeated and/or ongoing use and placement of its black mats at its interior entranceways." McFarland alleged that the "black mats" created an "undetectable hazardous condition in which the tip [of the mat] is allowed to rise creating a tripping hazard that results in

9

injuries," and that the mats have caused "one or more injury-producing incidents" on Harris County's premises.

The trial court denied the Plea and did not rule on Harris County's alternative summary judgment motion. This interlocutory appeal ensued.[6]

## The Amended Pleadings and the Plea

As a preliminary matter, we address McFarland's argument that Harris County's Plea was moot because it was filed before she filed her Third Amended Petition, which apparently remains the live pleading in this case. "When a party files an amended pleading after a hearing has been held on [a] plea but before the trial court's ruling, and the court's order reflects that it reviewed the parties' pleadings, the amended pleadings are considered the live pleadings before the trial court when it ruled on the plea." *Matzen v. McLane*, 604 S.W.3d 91, 100–01 (Tex. App.—Austin 2020), *aff'd in part, rev'd in part on other grounds*, 659 S.W.3d 381 (Tex. 2021) (citing *City of McKinney v. Hank's Rest. Grp.*, 412 S.W.3d 102, 110 (Tex. App.—Dallas 2013, no pet.)). The trial court's order on the Plea states it considered the Plea, the summary judgment, "the responses and replies thereto," and "the file." The trial court's review of "the file" is broad enough to indicate it considered the live pleadings before ruling on the Plea.

---

[6] *See* TEX. CIV. PRAC. & REM. CODE § 51.014(a)(8) (identifying denial of plea to jurisdiction by government unit as ruling subject to interlocutory appeal).

10

In any event, it is well-settled that claims that remain following an amended pleading may be disposed of through a plea to the jurisdiction filed prior to the amended pleading. *See Edcouch-Elsa Indep. Sch. Dist. v. Cabrera*, No. 13-21-00365-CV, 2022 WL 3257377, at \*2 (Tex. App.—Corpus Christi–Edinburg Aug. 11, 2022, no pet.) (mem. op.) ("[C]laims which remain following an amended filing, challenged in a dispositive motion *prior* to the amended filing, may remain challengeable.") (emphasis in original); *City of San Antonio v. Reyes*, No. 04-16-00748-CV, 2017 WL 3701772, at \*4 (Tex. App.—San Antonio Aug. 23, 2017, no pet.) (mem. op.) (holding amended petition did not moot plea to jurisdiction where amendment did not "address or cure" defendant's jurisdictional challenge). Because McFarland's Third Amended Petition did not advance any new claims not previously addressed in Harris County's Plea, we hold the Plea was not moot.

## Standard of Review

Subject matter jurisdiction is implicit in a court's power to decide a case. *City of Hous. v. Rhule*, 417 S.W.3d 440, 442 (Tex. 2013). To establish subject matter jurisdiction, a plaintiff must allege facts that demonstrate affirmatively the court's jurisdiction to hear her claims. *Town of Shady Shores v. Swanson*, 590 S.W.3d 544, 550 (Tex. 2019). The determination of whether a court has subject matter jurisdiction is a question of law. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004).

"A plea to the jurisdiction is a dilatory plea that seeks dismissal of a case for lack of subject matter jurisdiction." *Harris Cty. v. Sykes*, 136 S.W.3d 635, 638 (Tex. 2004); *TitleMax of Tex., Inc. v. City of Austin*, 639 S.W.3d 240, 245 (Tex. App.—Houston [1st Dist.] 2021, no pet.). Our review of a plea to the jurisdiction is *de novo* and mirrors the standard of review for a traditional motion for summary judgment. *Miranda*, 133 S.W.3d at 226; *Mission Consol. Indep. Sch. Dist. v. Garcia*, 372 S.W.3d 629, 635 (Tex. 2012). In our review, we "take as true all evidence favorable to the nonmovant" and "indulge every reasonable inference and resolve any doubts in the nonmovant's favor." *Miranda*, 133 S.W.3d at 228.

"[A] court deciding a plea to the jurisdiction . . . may consider evidence and must do so when necessary to resolve the jurisdictional issues raised." *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 555 (Tex. 2000). If the defendant meets its burden to establish the trial court lacks jurisdiction, the burden shifts to the plaintiff, who must then show there is a question of material fact as to the jurisdictional issue. *Garcia*, 372 S.W.3d at 635. If the evidence raises a fact issue concerning jurisdiction, the plea cannot be granted, and the fact finder must resolve the issue. *Id.* If, on the other hand, the evidence is undisputed or does not raise a fact issue, the plea must be determined as a matter of law. *Id.*

## The Texas Tort Claims Act

Sovereign immunity and its counterpart for political subdivisions, governmental immunity, protect the State and its political subdivisions, including municipalities, from lawsuits and liability for money damages. *Mission Consol. Indep. Sch. Dist. v. Garcia*, 253 S.W.3d 653, 655 (Tex. 2008); *see also Reata Constr. Corp. v. City of Dall.*, 197 S.W.3d 371, 374 (Tex. 2006). The immunity doctrine includes two distinct principles: immunity from liability and immunity from suit. *City of Dall. v. Albert*, 354 S.W.3d 368, 373 (Tex. 2011). While immunity from liability is an affirmative defense, immunity from suit deprives a court of subject matter jurisdiction. *City of Hous. v. Nicolai*, 539 S.W.3d 378, 386 (Tex. App.—Houston [1st Dist.] 2017, pet. denied). Harris County is a governmental unit generally immune from tort liability except where the legislature specifically waives that immunity. *Id.*; *see Dall. Cty. Mental Health & Mental Retardation v. Bossley*, 968 S.W.2d 339, 341 (Tex. 1998).

The plaintiff bears the burden of establishing a waiver of sovereign immunity in suits against the government. *Tex Dep't of Transp. v. Jones*, 8 S.W.3d 636, 638 (Tex. 1999); *Brazoria Cty. v. Colquitt*, 226 S.W.3d 551, 555 (Tex. App.—Houston [1st Dist. 2007, no pet.). McFarland therefore had the burden to establish jurisdiction by pleading—and ultimately proving—not only a valid immunity waiver but also a claim that falls within that waiver. *Archibeque v. N.*

13

*Tex. State Hosp.-Wichita Falls Campus*, 115 S.W.3d 154, 158 (Tex. App.—Fort Worth 2003, no pet.). "[I]f a Tort Claims Act plaintiff cannot satisfy 'the burden to affirmatively demonstrate the trial court's jurisdiction' by showing that the claim falls within a statutory waiver of immunity, the court must dismiss the suit." *Rattray v. City of Brownsville*, 662 S.W.3d 860, 865 (Tex. 2023) (quoting *Swanson*, 590 S.W.3d at 550).

Relevant to this appeal, Section 101.021 of the TTCA provides that a governmental unit in this state is liable for "personal injury and death so caused by a condition or use of tangible personal or real property if the governmental unit would, were it a private person, be liable to the claimant according to Texas law." TEX. CIV. PRAC. & REM. CODE § 101.021(2). Section 101.025 provides that "[s]overeign immunity to suit is waived and abolished to the extent of liability created by this chapter," and that one who has a claim under this chapter "may sue a governmental unit for damages allowed by this chapter." *Id.* § 101.025. We interpret waivers of immunity narrowly because the intent to waive must be expressed by clear and unambiguous language. *Garcia*, 253 S.W.3d at 655; *Reata Constr. Corp.*, 197 S.W.3d at 375. As the Texas Supreme Court repeatedly has stated, "any purported statutory waiver of sovereign immunity should be strictly construed in favor of retention of immunity." *PHI, Inc. v. Tex. Juv. Just. Dep't*,

14

593 S.W.3d 296, 303 (Tex. 2019) (quoting *Prairie View A & M Univ. v. Chatha*, 381 S.W.3d 500, 513 (Tex. 2012)).

## Duty to Licensee

The TTCA provides that when a claim arises from a premise defect, "the governmental unit owes to the claimant only the duty that a private person owes to a licensee on private property, unless the claimant pays for the use of the premises." TEX. CIV. PRAC. & REM. CODE § 101.022. A person is a licensee if he "enters and remains on the owner's land with the owner's consent and solely for the licensee's own purposes." *Harris Cty. v. Lopez*, 665 S.W.3d 874, 880 (Tex. App.—Houston [14th Dist.] 2023, pet. denied) (citing *Am. Indus. Life Ins. Co. v. Ruvalcaba*, 64 S.W.3d 126, 134 (Tex. App.—Houston [14th Dist.] 2001, pet. denied)).

Although McFarland's original petition alleged she was an invitee, she conceded in her Second Amended Original Petition and in her response to Harris County's Plea that she was a licensee when she fell.[7] We agree. *See Cty. of El Paso v. Baker*, 579 S.W.3d 686, 692 (Tex. App.—El Paso 2019, no pet.)

---

[7] "The difference between a licensee and an invitee is that an invitee is on the premises for the mutual benefit of herself and the possessor, while a licensee is there only for her own purposes, not because of any business dealings with the possessor." *Gontarek v. Sapp*, No. 10-23-00034-CV, 2023 WL 5624129, at *2 (Tex. App.—Waco Aug. 30, 2023, no pet.) (mem. op.) (citing *Mayer v. Willowbrook Plaza, L.P.*, 278 S.W.3d 901, 910 (Tex. App.—Houston [14th Dist.] 2009, no pet.)).

15

(analyzing TTCA claim where plaintiff was injured in courthouse elevator under licensee standard); *Simpson v. Harris Cty.*, 951 S.W.2d 251, 253 (Tex. App.—Houston [14th Dist.] 1997, no pet.) (holding litigant who slipped on courthouse steps was licensee, noting her payment of court filing fee did not make her invitee because fee was not payment for use of courthouse).

"A premises owner owes a less demanding duty to a licensee than to an invitee." *City of Hous. v. Ayala*, 628 S.W.3d 615, 619 (Tex. App.—Houston [14th Dist.] 2021, no pet.). When a licensee is involved, "the premises owner must not injure the licensee by willful, wanton, or grossly negligent conduct, and the premises owner must use ordinary care either to warn the licensee of, or to make reasonably safe, a dangerous condition of which the premises owner is actually aware and the licensee is not." *Id.* at 619 (citing *State Dep't of Highways & Public Transp. v. Payne*, 838 S.W.2d 235, 237 (Tex. 1992)); *see also Wal-Mart Stores, Inc. v. Miller*, 102 S.W.3d 706, 709 (Tex. 2003) (holding that "when the licensor has knowledge of a dangerous condition, and the licensee does not, a duty is owed on the part of the licensor to either warn the licensee or to make the condition reasonably safe") (quoting *State v. Tennison*, 509 S.W.2d 560, 562 (Tex. 1974)).

In the absence of willful, wanton, or grossly negligent conduct, a licensee plaintiff who seeks to establish a waiver of immunity for a premises defect under the TTCA must prove the following elements to establish a breach of duty:

(1) a condition of the premises created an unreasonable risk of harm to the licensee; (2) the owner actually knew of the condition; (3) the licensee did not actually know of the condition; (4) the owner failed to exercise ordinary care to protect the licensee from danger; [and] (5) the owner's failure was a proximate cause of injury to the licensee.

*Sampson v. Univ. of Tex. at Austin*, 500 S.W.3d 380, 391 (Tex. 2016) (quoting *Payne*, 838 S.W.2d at 237).  If a defendant establishes that no evidence supports one of these factors, its plea to the jurisdiction should be granted.  *Harris Cty. v. Park*, No. 01-22-00778-CV, 2023 WL 4710893, at *4 (Tex. App.—Houston [1st Dist.] July 25, 2023, no pet.) (mem. op.) (citing *Sampson*, 500 S.W.3d at 391).

### Actual Notice of an Unreasonable Risk of Harm[8]

A condition poses an unreasonable risk of harm when there is a "sufficient probability of a harmful event occurring that a reasonably prudent person would have foreseen it or some similar event as likely to happen."  *Christ v. Tex. Dep't of Transp.*, 664 S.W.3d 82, 87 (Tex. 2023) (quoting *Cty. of Cameron v. Brown*, 80 S.W.3d 549, 556 (Tex. 2002)).  Foreseeability in this context "does not require that the exact sequence of events that produced an injury be foreseeable."  *Brown*, 80 S.W.3d at 556.  "Instead, only the general danger must be foreseeable."  *Id*.  A condition will not be found to be unreasonably dangerous simply because it is not foolproof.  *Barlow v. Buc-ee's, Ltd.*, No. 01-20-00295-CV, 2021 WL 497236, at *4 (Tex. App.—Houston [1st Dist.] Feb. 11, 2021, pet. denied) (mem. op.) (citing

---

[8]    Because the first two factors overlap, we consider them together.

*Brinson Ford, Inc. v. Alger*, 228 S.W.3d 161, 163 (Tex. 2007)). When considering whether a condition is unreasonably dangerous, we consider factors that include "whether the relevant condition was clearly marked, its size, whether it had previously caused injuries or generated complaints, whether it substantially differed from conditions in the same class of objects, and whether it was naturally occurring." *Christ*, 664 S.W.3d at 87 (citing *United Supermarkets, LLC v. McIntire*, 646 S.W.3d 800, 803 (Tex. 2022)). "[A] common condition is not unreasonably dangerous merely because it causes an injury." *Id.*

Evidence of a similar injury or complaint caused by the same condition is probative, although not conclusive, on the questions of whether the condition posed an unreasonable risk of harm and the element of notice. *Barlow*, 2021 WL 497236, at *5.[9] The Supreme Court has held that to raise a fact issue "as to whether a common condition may support a premises-defect claim," the plaintiff must "adduce evidence either of prior complaints or injuries or that some surrounding circumstance transformed an everyday hazard into one measurably more likely to cause injury." *Christ*, 664 S.W.3d at 87–88. Although there is no single definitive test for determining actual knowledge, "courts generally consider

---

[9]     *See Seideneck v. Cal Bayreuther Assocs.*, 451 S.W.2d 752, 754 (Tex. 1970) ("[T]here seems to be no definitive, objective test which may be applied to determine whether a condition presents an unreasonable risk of harm. Obviously, evidence of other falls attributable to the same condition, or evidence of defectiveness of the rug, floor, or other condition causing the fall would be probative, although not conclusive, on the question.").

18

whether the premises owner has received reports of prior injuries or reports of the potential danger presented by the condition." *Univ. of Tex.-Pan Am. v. Aguilar*, 251 S.W.3d 511, 513 (Tex. 2008) (citing *Brinson Ford*, 228 S.W.3d at 163); *see also City of Dall. v. Reed*, 258 S.W.3d 620, 623 (Tex. 2008) (noting in determining city lacked actual knowledge of dangerous road condition that, among other things, "there were no reported accidents" caused by road condition or complaints about condition).

Harris County argues that its Plea established that the floor mat was not an unreasonable risk of harm of which it had actual knowledge. Harris County points to Carpelino's affidavit as evidence that it did not know of any reported incidents involving the floor mat, stating, "In total, Carpelino has spent approximately 17,000 hours working in the . . . Courthouse and has never heard about another incident involving the floor mat." Harris County also points to the surveillance video showing that McFarland was one of more than twenty people to cross the floor mat in a five-minute span and the only one to trip. McFarland responds that the surveillance video and Carpelino's affidavit merely create a fact issue.

A plaintiff may prove notice by establishing that the defendant actually knew the condition was dangerous or that it is more likely than not that the condition existed long enough to give the owner a reasonable opportunity to discover it. *See Wal-Mart Stores, Inc. v. Reece*, 81 S.W.3d 812, 814 (Tex. 2002).

19

But "the fact that materials deteriorate over time and may become dangerous does not itself create a dangerous condition, and the actual knowledge required for liability is of the dangerous condition at the time of the accident, not merely of the possibility that a dangerous condition can develop over time." *City of Dall. v. Thompson*, 210 S.W.3d 601, 603 (Tex. 2006); *Reyes v. City of Laredo*, 335 S.W.3d 605, 608 (Tex. 2010) (same); *see also CMH Homes, Inc. v. Daenen*, 15 S.W.3d 97, 101 (Tex. 2000) (holding that defendant's knowledge that its "step and platform units" "occasionally had become unstable" was not evidence units were unreasonably dangerous); *see also State v. Gonzalez*, 82 S.W.3d 322, 330 (Tex. 2002) (holding that evidence State knew traffic signs "had been repeatedly vandalized does not indicate, either directly or by reasonable inference, that [it] actually knew the signs were down before the accident occurred").

A premises owner's awareness of "a potential problem" is not tantamount to "actual knowledge of an existing danger." *Reyes*, 335 S.W.3d at 609. The actual knowledge must be of the dangerous condition at the time of the accident. *City of Corsicana v. Stewart*, 249 S.W.3d 412, 413–14 (Tex. 2008).

After reviewing the evidence presented to the trial court, we conclude McFarland did not establish actual knowledge or present evidence creating an issue of material fact on that element of her claim. The Supreme Court's decision in *City of Dallas v. Thompson* is instructive. The plaintiff in *Thompson* tripped over

20

the lip of an "improperly secured, metal, expansion-joint coverplate protruding up from the floor" in the Dallas Love Field airport, falling and injuring her shoulder. 210 S.W.3d at 602. The evidence showed that the area where the plaintiff fell was "well-traveled, and passengers and City employees walked through the area daily, including the day of the fall." *Id.* at 603. Accident logs indicated there had been prior instances of tripping in the same spot, but none in the past three years. *Id.* Evidence further showed the City "knew that the coverplate could become loose and raise suddenly or over time with ordinary wear and tear, and when it did, City employees would tighten it." *Id.* After Thompson's fall, the City "added a screw to the end of the coverplate where it was protruding." *Id.*

Thompson sued the City, which filed a plea to the jurisdiction. In response to the plea, Thompson argued that the City's knowledge that the coverplate "could loosen and protrude over time made the coverplate itself, actually protruding or not, a dangerous condition," and the City's knowledge of the periodic protrusion and its need for "inspection and maintenance" satisfied the actual knowledge requirement. *Id.* The trial court granted the City's plea to the jurisdiction and the court of appeals reversed. *Id.* at 602. The Supreme Court, agreeing with the trial court, reversed the judgment of the court of appeals, holding Thompson had not presented any evidence of the City's actual knowledge of the protruding coverplate on the day of the fall. *Id.* at 604. The court held that reports of past incidents of

21

tripping on the coverplate were "far too remote to show that the City knew of a dangerous condition" when Thompson fell, and that the City's use of an additional screw in the coverplate after Thompson's fall did not reflect its actual knowledge. *Id.* at 603–04.[10] The court held that despite evidence of prior falls, employees in the area who "probably had walked over" the protruding coverplate that same day, and the existence of a feasible, safer alternative design, the plaintiff had not "present[ed] any evidence of the City's actual knowledge of the protruding coverplate." *Id.*

Here too McFarland failed to present any evidence of Harris County's actual knowledge. There is no evidence of past incidents of tripping on the same mat on which McFarland tripped, or even in the same courthouse. While McFarland relied on a photo she claimed depicted another fall on the mat, she did not provide any identifying information such as the time, date, or place of the other fall purportedly depicted in Exhibit A to her response. Harris County averred that the photo of the previous fall appeared to have been taken in a different courthouse "because the doors appear to have push/pull handles where as the . . . Courthouse

---

[10] *See also Sampson v. Univ. of Tex. at Austin*, 500 S.W.3d 380, 395 (Tex. 2016) (holding after professor tripped on "improperly secured extension cord" adjacent to tailgate party, fact that "employees were present, 'double checked' everything, and made sure 'everything was up and running,' without more, [did] not show [university's] actual knowledge of the dangerous position of the cord at the time of the injury—that it was strung through the ivy and over the walkway in a manner that presented a tripping hazard").

entrance where [McFarland] fell is an automatic door without handles." Indeed, in its appellate brief, Harris County identified the source of the photo explaining that it is a photo that was included in a summary judgment response in an unrelated lawsuit. According to Harris County, the earlier lawsuit was based on a fall in a different Harris County courthouse involving a different mat that occurred when a different plaintiff allegedly "tripped over an entry mat that had been allowed to rise above the base of the doorway." The photo thus has no bearing on the present lawsuit. *See generally Bowman v. Brookshire Grocery Co.*, 317 S.W.3d 500, 505 (Tex. App.—Tyler 2010, pet. denied) (observing that tripping over "ruffled" floor mat in one store of retail chain does not constitute actual knowledge of condition for other stores in chain).

Nor are the additional photos McFarland attached to her response as Exhibits C, D, E, and F probative. Those photos depict "various mat placements, colors, and uses of mats" placed by Harris County "at one or more various buildings owned by Harris County." But there is no indication where, when, or by whom they were taken, nor is there an indication that the photos depict the mat where McFarland fell on the day of the incident. Nor is there evidence of any prior reports involving any mats or injuries at the courthouse where McFarland fell. McFarland thus failed to present any evidence of Harris County's actual knowledge of the allegedly protruding tip of the floor mat. Nor did she prove the

floor mat presented an unreasonable risk of harm. *See Gutierrez v. Dolgencorp of Tex., Inc.,* No. 13-07-664-CV, 2008 WL 3984165, at *3 (Tex. App.—Corpus Christi–Edinburg Aug. 29, 2008, no pet.) (mem. op.) (concluding there was no evidence that floor mat on which patron tripped presented unreasonable risk of harm when there was no evidence "that anyone had previously tripped on the mat either on that day or any other day. The only allegation that the mat was defective was that it was folded after appellant's fall"). We thus hold McFarland failed to establish a waiver of immunity for Harris County in connection with her fall. *See Sampson*, 500 S.W.3d at 391 (noting if government entity can show there was no evidence of one of elements required to establish breach of duty, plea to jurisdiction should be granted); *Park*, 2023 WL 4710893, at *5 (reversing denial of plea to jurisdiction when plaintiff failed to demonstrate fact issue existed as to whether she had actual knowledge of dangerous condition of stairs).

We sustain Harris County's sole issue.

## Conclusion

We reverse the trial court's interlocutory order denying Harris County's Plea to the Jurisdiction and render judgment dismissing McFarland's suit for lack of jurisdiction.

24

Veronica Rivas-Molloy
Justice

Panel consists of Chief Justice Adams and Justices Rivas-Molloy and Gunn.