Terry Jennings, Justice *381 In this interlocutory appeal,[1] appellant, the City of Houston (the "City"), challenges the trial court's order denying its plea to the jurisdiction in the suit by appellees, Frank Nicolai and Debora Nicolai, as parents of Caroline Nicolai, deceased (the "Nicolais"), against the City for negligence and wrongful death.[2] In its sole issue,[3] the City contends that the trial court lacks subject-matter jurisdiction over the Nicolais' suit.
We affirm.
Background
In their Seventh Amended Petition, the Nicolais alleged that at approximately 3:30 a.m. on October 2, 2013, Houston Police Department ("HPD") Officer R. Gonzales handcuffed the decedent and placed her in the back seat of a patrol car. The decedent was "either not seatbelted or improperly seatbelted." While Gonzales was transporting the decedent, an automobile, driven by Nicole Moser, struck the patrol car at the intersection of Chartres Street and Texas Avenue as Moser drove through a red light on Texas Avenue. The collision caused the decedent to be ejected from the patrol car and sustain severe injuries that ultimately led to her death. Law enforcement officers took Moser, who admitted at the scene that she had just left a nearby bar, to a hospital, where medical personnel, based on her blood-alcohol concentration, found her to be intoxicated.
The Nicolais further alleged that at the time of the collision, Officer Gonzales was acting within the course and scope of her employment with the City, operating a vehicle owned by the City, and negligent in:
• failing to use, misusing or improperly using the seatbelt on [the decedent] in the [police] vehicle, allowing her to be ejected upon impact;
• failing to keep such a lookout as a person of ordinary, reasonable prudence would have kept under the same or similar circumstances;
• failing to slow down and if necessary, yield to traffic so as to avoid the collision made the basis of this suit;
• failing to timely and properly apply brakes;
• failing to take appropriate evasive action or turn vehicle and/or slow down to avoid the accident or lessen the impact;
• handcuffing [the decedent] in the backseat, when she did not appear to be under arrest or need to be handcuffed;
• improperly or negligently providing police protection as required by a municipality under the Texas Civil Practice & Remedies Code and/or the Government Code; [and]
• failing to follow policies and procedures regarding use of seatbelts.
They asserted that Gonzales's negligence proximately caused the decedent's death and the City is vicariously liable for Gonzales's negligence.
*382 The Nicolais asserted that the City, pursuant to the Texas Tort Claims Act ("TTCA"),[4] waived its governmental immunity the trial court has subject-matter jurisdiction over their claims. Specifically, the TTCA waives immunity for a death caused by the operation or use of a motor vehicle[5] ; death caused by the use of tangible personal property, i.e., handcuffs and a seat belt[6] ; and damages arising from a municipality's "governmental functions," including police "protection and control."[7]
The City filed an answer, generally denying the allegations, and a plea to the jurisdiction, arguing that the trial court lacks subject-matter jurisdiction over the Nicolais' claims because they had not presented jurisdictional evidence raising a fact issue on any of their asserted waivers of the City's immunity.
The City asserted that at 2:00 a.m. on October 2, 2013, Officer Gonzales, while on patrol, received a call from Ellington Field security about a suspected intoxicated driver. When she arrived, Gonzales found the decedent sitting on a curb next to her car. The decedent, who appeared to be intoxicated, was unable to stand without falling. Gonzales placed her in handcuffs and into the back seat of the patrol car in order to take her to the Houston Sobering Center, located on Chenevert Street. According to an HPD investigation, the decedent "was not seat belted in the back of the patrol vehicle."
The City further asserted that as Officer Gonzales drove her patrol car north on Chartres Street and crossed the intersection at Texas Avenue, where she had a green light, the car driven by Moser, who had failed to stop at a red light, "violently" struck the patrol car on its left side. Law enforcement officers took Moser, who admitted at the scene that she had previously consumed "6-7 shots of alcohol" and "shouldn't have been driving," to a hospital, where personnel measured her blood-alcohol concentration at 0.189 grams. Moser later pleaded guilty to the offense of intoxication manslaughter, and a court found her guilty and assessed her punishment at confinement for eight years.
The City argued that it, under the TTCA, did not waive its immunity based on Officer Gonzales's use or operation of a motor vehicle because the undisputed evidence shows that Moser caused the collision. It also argued that it did not waive its immunity on the ground that Gonzales had failed to secure the decedent with a seat belt because an allegation of "non-use" cannot support a waiver based on the "use" of tangible personal property under the TTCA. Further, the use of handcuffs "falls within a well-recognized exception to the waivers set forth" in the TTCA for intentional torts. And the City asserted that even if one of the waivers of immunity under the TTCA applies to the Nicolais' claims, it nevertheless retained its immunity pursuant to the TTCA "Exclusions and Exceptions" for liability for intentional torts committed by third parties[8] and claims arising from a failure to provide, or the method of providing, police protection.[9]
To its plea, the City attached the Nicolais' Seventh Amended Petition; a "Texas Peace Officer's Crash Report"; the judgment of conviction against Moser; an excerpt of the deposition of Officer Gonzales;
*383 and an HPD "General Order No. 500-11," which provides that an officer "transporting publicly intoxicated individuals ... shall handcuff" the individuals. The City also attached an HPD "Current Information (Offense) Report," which states that the decedent "was not seat-belted" in Officer Gonzales's patrol car while being transported to the Sobering Center. After being struck by Moser, the patrol car "spun out" and struck a tree, "causing the [decedent] to be ejected out the rear window" and "thrown approximately 40-50 feet from the patrol car." She died minutes later.
In their response to the City's plea to the jurisdiction, the Nicolais argued that the City, based on Officer Gonzales's use of her patrol car, waived its immunity because she was actively operating it at the time of the collision and her use of the car "served as a cause-in-fact of the collision," which provided the "requisite nexus between the use of Gonzales's vehicle and [the decedent's] death." They asserted that the decedent's injuries are "attributable both to the fact of the collision and the fact that [the decedent] was not properly seat belted when the collision happened." Further, the use of seat belts is a part of the "operation and use" of a vehicle, and it was foreseeable that "not properly seat belting a handcuffed passenger in the backseat of a vehicle could lead to the passenger being thrown from the vehicle and injured."
Alternatively, the Nicolais argued that the City, based on a "misuse" of tangible personal property, waived its immunity because Officer Gonzales's "misuse of the seatbelt caused or contributed to [the decedent] being thrown from the vehicle during the collision." They asserted that a fact question exists as to whether Gonzales properly used the seat belt in her patrol car to restrain the decedent.
In regard to the allegation in their petition that the City, based on Gonzales's use of handcuffs, waived its immunity, the Nicolais asserted:
The salient issue in this case is the use of the motor-driven vehicle and its seatbelts, not the handcuffs that were placed on [the decedent]. Whether she was handcuffed or not, and whether this was done properly or not, the problem about which the Nicolais complain is the injuries caused by the fact she was not seat belted when the police car was involved in a collision.
Alternatively, the Nicolais further argued that the City waived its immunity because Officer Gonzales negligently implemented the City's policy requiring the use of a seat belt when transporting a person in a motor vehicle.
Finally, the Nicolais asserted that, "to the extent additional jurisdictional evidence may be necessary, the [City's plea was] not ripe for determination and discovery should be allowed to continue." To the extent that their Seventh Amended Petition did not contain sufficient jurisdictional facts, they requested that they be granted a further opportunity to amend their pleadings.
To their response, the Nicolais attached their Seventh Amended Petition; a "Texas Peace Officer's Crash Report"; an HPD "Crash Questionnaire"; a police report; the HPD Temporary Suspension of Officer Gonzales; an IACP National Law Enforcement Policy Center Model Policy regarding the Transport of Prisoners; and excerpts of the depositions of Officer Gonzales and HPD Officer T. Cox, of the Vehicular Crimes Division, Crash Reconstruction Unit.
The Nicolais also attached to their response the HPD Lieutenant A. Riddle's Internal Affairs Investigation Summary, which reflects that HPD disciplined Officer *384 Gonzales for her "Failure to Secure [the decedent] in [a] Seat Belt." Lieutenant Riddle explained that HPD policy and Texas law require that "any passengers ... riding in the back seat of a police vehicle ... be secured by a seat belt if the seat is equipped with one."
Lieutenant Riddle noted that HPD Officer A. Hart, of the Special Investigations Command, was the lead investigator assigned to the collision. When Hart asked Officer Gonzales whether she "had buckled the [decedent] in her seat belt, Gonzales replied, "No." Gonzales also stated that she, herself, had been wearing a seat belt. Hart "visually inspected all three of the rear seat belts in the patrol car," and "they appeared to be in the unused position, in contrast to [Gonzales's] seat belt, which was in the extended 'locked out' position." Hart explained that "[a]fter an impact[,] the seatbelt stays in an extended position." She also noted that in the written Crash Questionnaire, Gonzales was asked: "If transporting a prisoner, was the prisoner wearing a seat belt?" And she responded, "Unknown, to the best of my knowledge I did seat belt the prisoner before transport based on my habit and custom."
Lieutenant Riddle concluded that the "physical evidence" shows that the decedent "was not restrained using a seat belt," as follows:
[A]n examination of the rear seat belts in Shop #33619, as documented in the incident report in supplement #39, showed that the left and right side seat belts functioned properly. The center seat belt was fully retracted and would not spool down from the reel. The anchors for all of the rear seat belts on this vehicle were intact. Officer Cox, of the Crash Reconstruction Unit, conducted an examination of the seat belts and concluded: "Because the left and rear seat belts appeared to function properly and the anchors remain intact, based on [his] training and experience, the rear seat passenger was not wearing a seatbelt at the time of the crash."
The Nicolais also attached to their response an HPD Disciplinary Worksheet, which states:
... The accident clearly revealed [that the decedent] was not wearing her seat belt at the time of the crash. Officer Gonzales admitted to the accident investigator that she had not buckled [the decedent] in her seat belt. Officer Gonzales later claimed that she did not recall whether she had buckled [the decedent] in her seat belt but she normally does.
The Nicolais also presented excerpts of Officer Cox's deposition, in which he testified as follows:
Q. ... So when you inspected the vehicle after the crash, in your opinion, it did not appear that the seat belt was in use at the time of the crash?
A. That is correct.
Q. Which would indicate to you that ... [the decedent] was not seatbelted at the time of the crash?
A. That is correct.
Cox further testified that HPD's policies require that its police officers seat belt their passengers for safety reasons:
Q. [Y]ou know as an officer if you take someone into custody and you handcuff their hands behind their back and put them in the back seat of the vehicle, you are going to have to be the one to seat-belt them because they can't seat-belt themself, correct?
A. That is correct, yes, sir.
....
*385 Q. Isn't one of the reasons that we wear seat belts and encourage officers to seat-belt their passengers so that if there is a collision their passengers are kept safe?
A. One of the reasons, yes, sir.
....
Q. And if they are seat-belted, they don't normally get ejected, correct?
....
A. Yes, sir.
Q. And all of the accidents you've investigated, have you ever seen anyone ejected from a vehicle that was properly seat-belted, absent the seat-belt failing?
A. No, sir.
....
Q. And do most people that are ejected from a vehicle get severely injured and/or killed?
....
A. They can, yes, sir.
Standard of Review
We review de novo a trial court's ruling on a jurisdictional plea. See Ben Bolt-Palito Blanco Consol. Indep. Sch. Dist. v. Tex. Political Subdivisions Prop./Cas. Joint Self-Ins. Fund , 212 S.W.3d 320, 323 (Tex. 2006) ; City of Hous. v. Vallejo , 371 S.W.3d 499, 501 (Tex. App.-Houston [1st Dist.] 2012, pet. denied). A plea to the jurisdiction is a dilatory plea that seeks dismissal of a case for lack of subject matter jurisdiction. Harris Cty. v. Sykes , 136 S.W.3d 635, 638 (Tex. 2004) ; Villarreal v. Harris Cty. , 226 S.W.3d 537, 541 (Tex. App.-Houston [1st Dist.] 2006, no pet.). A plea to the jurisdiction may be utilized to challenge whether the plaintiff has met its burden of alleging jurisdictional facts or to challenge the existence of jurisdictional facts. See Tex. Dep't of Parks & Wildlife v. Miranda , 133 S.W.3d 217, 226-27 (Tex. 2004).
When a plea to the jurisdiction challenges the pleadings, we determine whether the pleader has alleged facts that affirmatively demonstrate the trial court's jurisdiction. Id. at 226. We construe the pleadings liberally in favor of the pleader, accept all factual allegations as true, and look to the pleader's intent. Heckman v. Williamson Cty. , 369 S.W.3d 137, 150 (Tex. 2012). If a plaintiff "fails to plead facts that establish jurisdiction, but the petition does not affirmatively demonstrate incurable defects in jurisdiction, the issue is one of pleading sufficiency and the plaintiff should be afforded the opportunity to amend." Cty. of Cameron v. Brown , 80 S.W.3d 549, 555 (Tex. 2002).
Review of a plea challenging the existence of jurisdictional facts, however, mirrors that of a matter-of-law summary-judgment motion. Mission Consol. Indep. Sch. Dist. v. Garcia , 372 S.W.3d 629, 635 (Tex. 2012) ; City of Hous. v. Guthrie , 332 S.W.3d 578, 587 (Tex. App.-Houston [1st Dist.] 2009, pet. denied) ("[T]his standard generally mirrors that of a summary judgment under Texas Rule of Civil Procedure 166a(c).... By requiring the [political subdivision] to meet the summary judgment standard of proof ..., we protect the plaintiffs from having to put on their case simply to establish jurisdiction."); see also TEX. R. CIV. P. 166a(c). "[A] court deciding a plea to the jurisdiction ... may consider evidence and must do so when necessary to resolve the jurisdictional issues raised." Bland Indep. Sch. Dist. v. Blue , 34 S.W.3d 547, 555 (Tex. 2000). A court may consider evidence as necessary to resolve a dispute over the jurisdictional facts even if the evidence "implicates both the subject matter jurisdiction of the court and the merits of the case." Miranda , 133 S.W.3d at 226. We take as true all evidence favorable to *386 the nonmovant and we indulge every reasonable inference and resolve any doubts in the nonmovant's favor. Id. at 228. If the defendant meets its burden to establish that the trial court lacks jurisdiction, the plaintiff is then required to show that there is a material fact question regarding the jurisdictional issue. Id. at 227-28. If the evidence raises a fact issue regarding jurisdiction, the plea cannot be granted, and a fact finder must resolve the issue. Id. On the other hand, if the evidence is undisputed or fails to raise a fact issue, the plea must be determined as a matter of law. Id. at 228 ; Garcia , 372 S.W.3d at 635.
Governmental Immunity
In its sole issue, the City argues that the trial court erred in denying its plea to the jurisdiction because it conclusively established its immunity from suit on the Nicolais' claims. It asserts that they did not present jurisdictional evidence raising a fact issue on their asserted waiver of the City's governmental immunity. See TEX. CIV. PRAC. & REM. CODE ANN. §§ 101.021 (Vernon 2011), 101.0215(a)(1) (Vernon Supp. 2016).
Absent waiver, political subdivisions of the state, including cities, are entitled to immunity from lawsuits for money damages. See Reata Constr. Corp. v. City of Dall. , 197 S.W.3d 371, 374 (Tex. 2006) ; Harris Cty., Tex. v. Knapp , 496 S.W.3d 871, 878 (Tex. App.-Houston [1st Dist.] 2016, pet. denied). The immunity doctrine includes two distinct principles: immunity from liability and immunity from suit. City of Dall. v. Albert , 354 S.W.3d 368, 373 (Tex. 2011) ; Miranda , 133 S.W.3d at 224 ; Knapp , 496 S.W.3d at 878. Immunity from liability is an affirmative defense, while immunity from suit deprives a court of subject-matter jurisdiction. Knapp , 496 S.W.3d at 878.
A trial court may not assume subject-matter jurisdiction over a suit against a municipality unless the suit fits within a valid statutory or constitutional waiver of governmental immunity. Suarez v. City of Tex. City , 465 S.W.3d 623, 631 (Tex. 2015) ; City of Watauga v. Gordon , 434 S.W.3d 586, 589 (Tex. 2014). We interpret statutory waivers of governmental immunity narrowly, as the legislature's intent to waive immunity must be clear and unambiguous. Mission Consol. Indep. Sch. Dist. v. Garcia , 253 S.W.3d 653, 655 (Tex. 2008) ; see also TEX. GOV'T CODE ANN. § 311.034 (Vernon 2013).
The City of Houston is a governmental unit generally immune from tort liability except where that immunity has been specifically waived by the legislature. City of Hous. v. Rushing , 7 S.W.3d 909, 914 (Tex. App.-Houston [1st Dist.] 1999, pet. denied) ; see Dall. Cty. Mental Health & Mental Retardation v. Bossley , 968 S.W.2d 339, 341 (Tex. 1998). The TTCA provides limited waivers of immunity from suits[10] against governmental entities for claims arising from three general areas: (1) injury caused by an employee's operation or use of a motor-driven vehicle or motor-driven equipment, (2) injury caused by a condition or use of tangible property, and (3) injury caused by a condition or use of real property. See TEX. CIV. PRAC. & REM. CODE § 101.021 ; Stephen F. Austin State Univ. v. Flynn , 228 S.W.3d 653, 657 (Tex. 2007) ; Rushing , 7 S.W.3d at 914. The TTCA also provides a list of governmental functions, including police "protection and control,"
*387 for which a municipality may be liable. TEX. CIV. PRAC. & REM. CODE ANN. § 101.0215(a)(1). To hold a municipality liable pursuant to section 101.0215, however, the liability must still arise out of one of the three general areas of waiver. Rushing , 7 S.W.3d at 914.
Further, the TTCA, in its "Exclusions and Exceptions," expressly states that it does not apply, and thus a municipality's immunity is retained, in regard to certain claims, including those "arising out of assault, battery, false imprisonment, or any other intentional tort" and "from the failure to provide or method of providing police ... protection." TEX. CIV. PRAC. & REM. CODE ANN. §§ 101.055(3), 101.057(2) (Vernon 2011); see City of Watauga v. Gordon , 434 S.W.3d 586, 594 (Tex. 2014) (intentional tort); Delaney v. Univ. of Hous. , 835 S.W.2d 56, 60 (Tex. 1992) (same); State v. Terrell , 588 S.W.2d 784, 787 (Tex. 1979) (police protection).
Use of a Motor-Driven Vehicle
In a portion of its sole issue, the City argues that it did not waive its governmental immunity because the Nicolais did not present jurisdictional evidence raising a fact issue on their asserted waiver of the City's immunity for claims arising from an employee's operation or use of a motor-driven vehicle. See TEX. CIV. PRAC. & REM. CODE ANN. § 101.021(1).
The TTCA provides, in pertinent part, that a governmental unit is liable for:
(1) property damage, personal injury, and death proximately caused by the wrongful act or omission or the negligence of an employee acting within his scope of employment if:
(A) the property damage, personal injury, or death arises from the operation or use of a motor-driven vehicle or motor-driven equipment; and
(B) the employee would be personally liable to the claimant according to Texas law....
Id. (emphasis added); see Bossley , 968 S.W.2d at 343. "[W]e strictly construe section 101.021's vehicle-use requirement." Ryder Integrated Logistics, Inc. v. Fayette Cty. , 453 S.W.3d 922, 927 (Tex. 2015) ; see also Tex. Nat. Res. Conserv. Comm'n v. White , 46 S.W.3d 864, 869 (Tex. 2001) (term "use," in section 101.021, means "to put or bring into action or service; to employ for or apply to a given purpose"). A government employee must have been "actively operating the vehicle at the time of the [injury]" and the "vehicle must have been used as a vehicle." Ryder Integrated Logistics, Inc. , 453 S.W.3d at 927 ; cf. City of Kemah v. Vela , 149 S.W.3d 199, 205 (Tex. App.-Houston [14th Dist.] 2004, pet. denied) (no "use" where plaintiff injured while sitting in parked patrol car).
The Texas Supreme Court defines the "arises from" standard in section 101.021(1)(A) as a "nexus between the operation or use of the motor-driven vehicle or equipment and the plaintiff's injuries." Ryder Integrated Logistics, Inc. , 453 S.W.3d at 928. The "threshold" is "something more than actual cause but less than proximate cause." Id. at 928-29 (citing Utica Nat'l Ins. Co. of Tex. v. Am. Indem. Co. , 141 S.W.3d 198, 203 (Tex. 2004) ("[A]rise out of means ... there is but[-]for causation, though not necessarily direct or proximate causation.")). Thus, a plaintiff "can" satisfy the "arising from" standard by demonstrating proximate cause. Id. at 929.
The components of proximate cause are cause-in-fact and foreseeability. Id. A tortious act is a "cause-in-fact" if it serves as a "substantial factor in causing the injury and without which the injury *388 would not have occurred." Id. ("Cause in fact is essentially but-for causation."). "Foreseeability requires only 'that the injury be of such a general character as might reasonably have been anticipated[ ] and that the injured party ... be so situated with relation to the wrongful act that injury to him or to one similarly situated might reasonably have been foreseen.' " Id. (quoting Nixon v. Mr. Prop. Mgmt. Co. , 690 S.W.2d 546, 551 (Tex. 1985) ). Because proximate cause is ultimately a question for a fact-finder, we consider only whether the evidence[11] creates a fact question regarding the "nexus," or "causal relationship," "between the operation or use of the motor-driven vehicle ... and the [decedent's] injuries." Id. at 928-29.
In regard to the first element of section 101.021(1), i.e., "personal injury and death proximately caused by the wrongful act or omission or the negligence of an employee acting within her scope of employment," the HPD Internal Affairs Investigation Summary of Lieutenant A. Riddle reflects that HPD policy and Texas law require that "any passengers ... riding in the back seat of a police vehicle ... be secured by a seat belt if the seat is equipped with one," as follows:
[HPD] General Order 500-01, Effecting Arrests and Searches, Section 4, Restraints and Transportation, states in part:
When placing a prisoner in a patrol vehicle, officers shall position the prisoner's back toward the upper back seat with the prisoner sitting upright and facing forward. Officers shall then properly secure the prisoner in the seat bell and shoulder harness. The transporting officer shall watch the prisoner and ensure the prisoner does not become entangled in the seat belt and that the seat belt does not wrap around the prisoner's neck.
[HPD] General Order 500-02, Handling and Transporting Prisoners and Other Persons, Section 4, ... states in part:
Vehicles shall not be placed in motion until the driver and all passengers have been fastened in their seat restraints.
.... Texas Transportation Code, [section 545.413 ], Safety Belts; Offense, states in part:
(a) A person commits an offense if:
(1) the person:
(A) is at least 15 years of age:
(B) is riding in a passenger vehicle while the vehicle is being operated;
(C) is occupying a seat that is equipped with a safety belt; and
(D) is not secured by a safety belt.
See TEX. TRANSP. CODE ANN. § 545.413 (Vernon Supp. 2016).
The City's excerpts of the HPD "Current Information (Offense) Report" state that the decedent "was not seat-belted" in Officer Gonzales's patrol car while being transported to the Sobering Center. After being struck by Moser's car, the patrol car "spun out" and struck a tree, "causing the [decedent] to be ejected out the rear window" and "thrown approximately 40-50 feet from the patrol car." She died minutes later. On appeal, the City concedes that the evidence shows that "Officer Gonzales never used seatbelts to restrain [the decedent]"
*389 in the patrol car. And "every bit of evidence submitted by both parties confirms that fact." (Emphasis omitted.)
"It is well-established that a peace officer's flawed execution of policy gives rise to a colorable negligence claim." Ryder Integrated Logistics, Inc. , 453 S.W.3d at 928 (citing Terrell , 588 S.W.2d at 788 ) (where officer acts negligently in carrying out policy, governmental liability may exist)). Further, as noted by the City, "it is undisputed that [the decedent] was killed ... when she was ejected from" Officer Gonzales's patrol car. Thus, the evidence raises a fact issue as to the decedent's death having been "proximately caused by the ... omission or the negligence of an employee acting within [her] scope of employment." See TEX. CIV. PRAC. & REM. CODE ANN. § 101.021(1).
In regard to section 101.021(1)(A), i.e., "personal injury[ ] or death aris [ing] from the operation or use of a motor-driven vehicle or motor-driven equipment," the City asserts that the Nicolais did not present evidence that the decedent's death "arose from" Officer Gonzales's "operation or use of her patrol car." See TEX. CIV. PRAC. & REM. CODE ANN. § 101.021(1)(A) ; Ryder Integrated Logistics, Inc. , 453 S.W.3d at 928.
In Ryder Integrated Logistics, Inc. , a police officer, during a routine traffic stop of the driver of an eighteen-wheel truck, drove onto the adjacent shoulder of the road and began positioning his patrol car such that his headlights and high-beam spotlight were shining into oncoming traffic. 453 S.W.3d at 926. Seconds later, while the officer was still repositioning his car, the driver of an oncoming eighteen-wheel truck veered right, clipped the back of the parked eighteen-wheeler, overturned, and ignited, killing the driver of the oncoming truck. Id. The plaintiff, the owner of the parked truck, alleged that the officer had failed to follow proper protocols and procedures in moving his patrol car in such a way that its headlights temporarily blinded other drivers. Id. at 928. The county filed a plea to the jurisdiction, asserting that the injuries did not "arise from" the officer's use of a motor vehicle under section 101.021(1)(A). Id. at 926.
The Texas Supreme Court, in Ryder Integrated Logistics , concluded that there was "no genuine dispute that [the officer] was operating the cruiser at the time of the alleged injury" because he was driving it. Id. at 928. Although the county argued that the "use of headlights alone [could] not constitute the operation or use of a vehicle," the court concluded that the officer "was not just operating the headlights-he was driving the car." Id. Further, because the injuries would not have occurred but for the officer's decision to position the headlights of his patrol car toward oncoming traffic, his action was a cause-in-fact of the injuries. Id. at 929. And the allegations were sufficient to raise a fact issue as to proximate cause because a reasonable officer could have foreseen that "driving westbound near an eastbound shoulder at night-with headlights and emergency lights illuminated-might confuse drivers, disrupt traffic, and lead to a collision much like the one that ultimately occurred." Id. The alleged harm was of the very character that might reasonably have been anticipated, and a "reasonable juror might find the requisite nexus between the use of [the officer's] vehicle" and the injuries suffered. Id. Thus, the plaintiff alleged an injury "arising from the tortious operation or use of a [motor-driven] vehicle." Id. at 930 ; see also TEX. CIV. PRAC. & REM. CODE ANN. § 101.021(1)(A).
Here, it is undisputed that Officer Gonzales was actively operating, i.e., driving, her patrol car at the time of the collision and using it to transport the decedent to *390 the Sobering Center, and not just as a place to hold her. See TEX. CIV. PRAC. & REM. CODE ANN. § 101.021(1) ; Ryder Integrated Logistics, Inc. , 453 S.W.3d at 927-28 (police officer "using" patrol car, not simply operating headlights). Further, the evidence of Officer Gonzales's "omission" or "negligence" in transporting the decedent in the back of the patrol car without a seat belt, in violation of HPD policy and state law, "relate[s] to the operation of the vehicle" itself, and not to "some other aspect of [Gonzales's] conduct." See Ryder Integrated Logistics, Inc. , 453 S.W.3d at 928 ; see, e.g. , Hernandez v. City of Lubbock , 253 S.W.3d 750, 760-61 (Tex. App.-Amarillo 2007, no pet.) (officer's commission of assault in patrol car not "tortious use of a vehicle").
Next, the undisputed evidence shows that Gonzales's decision not to secure the decedent in a seat belt, which allowed her to be ejected through the back window of the patrol car during the collision and thrown forty to fifty feet, constituted a substantial factor in causing the decedent's injuries, without which the injuries would not have occurred. See TEX. CIV. PRAC. & REM. CODE ANN. § 101.021(1)(A) ; Ryder Integrated Logistics, Inc. , 453 S.W.3d at 929 (tortious act "cause-in-fact" if serves as "substantial factor in causing the injury and without which the injury would not have occurred").
In regard to proximate cause, Officer Cox testified that HPD's policies require that its police officers seat belt their passengers because injury or death from ejection is foreseeable:
Q. [Y]ou know as an officer if you take someone into custody and you handcuff their hands behind their back and put them in the back seat of the vehicle, you are going to have to be the one to seat-belt them because they can't seat-belt themself, correct?
A. That is correct, yes, sir.
....
Q. Isn't one of the reasons that we wear seat belts and encourage officers to seat-belt their passengers so that if there is a collision their passengers are kept safe?
A. One of the reasons, yes, sir.
....
Q. And if they are seat-belted, they don't normally get ejected, correct?
....
A. Yes, sir.
Q. And all of the accidents you've investigated, have you ever seen anyone ejected from a vehicle that was properly seat-belted, absent the seat-belt failing?
A. No, sir.
....
Q. And do most people that are ejected from a vehicle get severely injured and/or killed?
....
A. They can, yes, sir.
This evidence demonstrates that a reasonable peace officer could have foreseen that placing a handcuffed passenger in the back seat of a patrol car without a seat belt could, in the event of a collision, allow the passenger to be ejected from the car and to sustain the type of injuries alleged in this case. See Ryder Integrated Logistics, Inc. , 453 S.W.3d at 929. Moreover, the Texas Supreme Court has noted that "[a] wealth of research has established that seat belts reduce injuries and save lives." Nabors Well Servs., Ltd. v. Romero , 456 S.W.3d 553, 565 (Tex. 2015). "And while ejection is 'one of the most injurious events that can happen to a person during a crash,' seat belts are up to 99% effective at *391 preventing 'total ejections.' " Id. (quoting Nat'l Highway Traffic Safety Admin., Dep't of Transp., DOT HS 810 649, Primary Enforcement Saves Lives-The Case For Upgrading Secondary Safety Belt Laws 25 (Sept. 2006)).
"Foreseeability requires only that the injury be of such a general character as might reasonably have been anticipated[ ] and that the injured party ... be so situated with relation to the wrongful act that injury to [her] or to one similarly situated might reasonably have been foreseen." See Ryder Integrated Logistics, Inc. , 453 S.W.3d at 929 (internal quotations omitted). Again, because proximate cause is ultimately a question for a fact-finder, we consider only whether the evidence presented creates a fact question regarding the "nexus," or "causal relationship," "between the operation or use of the motor-driven vehicle ... and the [decedent's] injuries." See ids="6892276" index="65" url="https://cite.case.law/sw3d/453/922/#p927">id. at 928-29. Taking as true all evidence favorable to the Nicolais and indulging every reasonable inference and resolving any doubts in their favor, the evidence presented is sufficient to raise a fact issue as to proximate cause. See id. ; see also Miranda , 133 S.W.3d at 228.
The City argues that seat belts constitute "tangible personal property" that are not a part of the "operation or use of a motor-driven vehicle" because "Texas courts have long held that the use or non-use of various kinds of restraints in motor-driven vehicles is not a part of the operation or use of that vehicle but is considered use of 'tangible personal property' for purpose [s] of waiver of governmental immunity."
In support of its argument, the City relies on Montoya v. Houston Independent School District , 177 S.W.3d 332 (Tex. App.-Houston [1st Dist.] 2005, no pet.). In Montoya , which pre-dates the Texas Supreme Court's opinion in Ryder , the plaintiffs alleged that a school bus driver failed to keep a proper lookout and stop a bus in time to prevent injuries to a child passenger who had opened the back door and fallen out of the moving bus. Id. at 334-35. This Court held that the allegations actually related to the bus driver's duty to respond to the child's conduct and not to the operation of the bus itself. Id. at 337. Although we noted that the plaintiffs' allegation that the bus driver had also "negligently failed to use the [child's safety] harness properly [did] not relate to the driver's operation or use of the bus," we held that "even assuming that the driver's negligent use of the harness constituted an operation or use of the bus, the negligent use was not the actual cause of [the passenger's] injuries." Id. at 337-38. Rather, the passenger's injuries arose from his "affirmative act" of opening the school bus emergency door and exiting the bus while it was in motion. Id. at 338. Because the plaintiffs' allegations did not "demonstrate the critical nexus between the driver's negligent use of the harness" and the passenger's fall from the bus, they were insufficient to support a waiver of the school district's immunity. Id. Here, there is no evidence that the decedent exited Officer Gonzales's patrol car of her own volition.
In Mackey v. Midland-Odessa Transit , on which the City also relies, the undisputed evidence was that the decedent, who was injured when her motorized scooter tipped while she being transported on a bus, had "declined to use the shoulder strap and was solely responsible for fastening and adjusting the lap belt to her comfort level." No. 11-13-00083-CV, 2015 WL 1501466, at *2 (Tex. App.-Eastland Mar. 31, 2015, pet. denied) (mem. op.). Here, there is no evidence that the decedent declined to use a seat belt.
We note that in Austin Independent School District v. Gutierrez , which this *392 Court, in Montoya , distinguished, a school bus driver discharged a student from the bus and then honked the bus horn to signal to the student to cross the road. 54 S.W.3d 860, 861 (Tex. App.-Austin 2001, pet. denied). When the student attempted to cross the road, however, she was struck and killed by a passing motorist. Id. The court upheld the trial court's denial of the school district's plea to the jurisdiction because the bus driver's "affirmative action of honking the horn," which the evidence showed contributed to the injury, did constitute a "use" of the bus. Id. at 864, 866 ("[S]tatutory phrase 'arises from' requires that there be some connection between the injury and the act of using or operating the vehicle[.]").
Similarly, in Hitchcock v. Garvin , a school bus driver failed to activate bus flashers or warning signals prior to unloading students. 738 S.W.2d 34, 36 (Tex. App.-Dallas 1987, no writ). Immediately after exiting the bus, a child attempted to cross the street but was struck by a passing motorist. Id. at 37. The court held that the driver's failure to activate the flashers or warning signals of the school bus while the child was exiting came within the driver's "operation or use of a motor-driven vehicle" in section 101.021. Id.
We hold that the Nicolais presented evidence raising a fact issue on their asserted waiver of the City's immunity for claims arising from an employee's operation or use of a motor-driven vehicle. See TEX. CIV. PRAC. & REM. CODE ANN. § 101.021(1). Where, as here, the evidence raises a fact issue regarding jurisdiction, the plea cannot be granted and a fact finder must resolve the issue. See Miranda , 133 S.W.3d at 228.
Exceptions
The City argues that even if the Nicolais did present evidence raising a fact issue within the TTCA's limited waiver of immunity for claims involving the use or operation of a motor vehicle, the City retains its immunity because the TTCA's exception for intentional torts applies. See TEX. CIV. PRAC. & REM. CODE ANN. § 101.057(2). The City asserts that it is "undisputed that [the decedent] was killed when a vehicle driven by a legally-drunk driver, [Moser], proceeding at an unlawfully high speed, ran a red light and violently struck [Officer Gonzales's] patrol car, in which [the decedent] was a passenger, with such force that [she] was ejected from the patrol car and died as a result." It asserts that Moser's conduct "is considered an intentional tort for purposes of [section] 101.057(2)."
Again, the TTCA's "Exclusions and Exceptions" are not "prohibition[s] of certain actions against the government." Delaney , 835 S.W.2d at 58. Although, "[i]n some respects, the effect of [an] exception is prohibitory," it is an "exception to the limited waiver of immunity brought about by the Act." Id. Thus, for instance, "if a claim is barred by immunity, but immunity is waived under sections 101.021-.022 of the Act, [an] action is still prohibited if the claim falls within the section 101.057(2) exception." Id. Section 101.057(2) provides: "This chapter does not apply to a claim ... arising out of assault, battery, ... or any other intentional tort...." TEX. CIV. PRAC. & REM. CODE ANN. § 101.057(2).
In Delaney , a student who was sexually assaulted in her dormitory room at a public university brought a negligence claim against the university based on its alleged failure to repair a damaged door lock that allowed an intruder to gain access to her room. 835 S.W.2d at 57. The university argued that the student's claim against it was barred by governmental immunity because it arose from an intentional tort. Id. The Texas Supreme Court reasoned that to read the intentional tort exception in section 101.057(2)"so broadly as to except *393 from the waiver of immunity any claim, irrespective of its nature, for injuries resulting from an intentional tort, is to ignore a distinction that the law recognizes when negligent and intentional acts both contribute to the occasion of injury." Id. at 60. "[I]ntentional conduct intervening between a negligent act and the result does not always vitiate liability for the negligence." Id. Rather, distinct negligence claims that focus on the actions of the governmental defendant are not barred. Id. For the exception to apply, the intentional tortfeasor must be the governmental employee whose conduct is the subject of the claim. Id. at 59-60 (emphasis added). The supreme court concluded that the student's negligence claim against the university, which was based on its alleged failure to repair a broken door lock and secure the campus dormitory, was distinct from the intentional tort, i.e., the sexual assault. Id. at 60. Further, the governmental employee whose conduct was the subject of Delaney's claims against the university was not the intentional tortfeasor, i.e., the perpetrator of the assault. Id. The supreme court concluded that Delaney's negligence claims against the university did not "arise out of" the intentional tort and did not fall within the scope of section 101.057(2). Id. at 59-60.
In support of its assertion that it is immune from liability for intentional torts committed by third parties, the City relies on Barefield v. City of Houston , 846 S.W.2d 399 (Tex. App.-Houston [14th Dist.] 1992, writ denied). Although, in Barefield , the court noted that the governmental entity was immune "from liability for intentional torts committed by third parties," the plaintiffs' "cause of action against the City stem[med] from the lack of police presence on the premises where the attacks occurred and not from the negligence of one or more police officers. " Id. at 405 (emphasis added). Similarly, in Gonzales v. City of El Paso , on which the City also relies, the court noted that the plaintiffs' injuries were the result of intentional torts by third parties and not "a law enforcement actor." 978 S.W.2d 619, 622 (Tex. App.-El Paso 1998, no pet.). As the City notes in its brief, the plaintiffs' claims in these cases "were grounded in the intentional torts of third parties."
Here, even were we to conclude, as the City urges, that Moser's conduct is "considered an intentional tort for purposes of section 101.057(2)," the exception does not apply. See TEX. CIV. PRAC. & REM. CODE ANN. § 101.057(2). The Nicolais' negligence claim, which is based on an alleged failure by the City's employee, Officer Gonzales, to secure the decedent in a seat belt in the back of a patrol car, is distinct from any intentional tort committed by Moser. See Delaney , 835 S.W.2d at 59-60 ; cf. Barefield , 846 S.W.2d at 405. And Officer Gonzales, the government employee whose conduct is the subject of the Nicolais' claims against the City, is not the intentional tortfeasor. See Delaney , 835 S.W.2d at 60. There is no allegation in this case that Officer Gonzales acted intentionally in regard to failing to secure the decedent in a seat belt. Cf. Scott v. Prairie View A & M Univ. , 7 S.W.3d 717, 719 (Tex. App.-Houston [1st Dist.] 1999, pet. denied) ("[S]tate does not waive immunity if the tortious conduct was the result of an intentional tort committed by a government employee[.]"). Thus, the Nicolais' negligence claim against the City does not "arise out of" an intentional tort and does not fall within the scope of the exception in section 101.057(2). See Delaney , 835 S.W.2d at 59-60 ; cf. Harris Cty., Tex. v. Cabazos , 177 S.W.3d 105, 111 (Tex. App.-Houston [1st Dist.] 2005, no pet.) (where gravamen of plaintiff's claim against county was that law enforcement officer intentionally shot plaintiff, nexus existed between *394 claim and intentional tort); Pineda v. City of Hous. , 175 S.W.3d 276, 282 (Tex. App.-Houston [1st Dist.] 2004, no pet.) (where gravamen of plaintiffs' wrongful-death claim against city was that law enforcement officers intentionally shot decedent, tortfeasors were governmental employees whose conduct was subject of complaint, and nexus existed between claims and intentional tort); Gonzales , 978 S.W.2d at 623 ; Barefield , 846 S.W.2d at 405. Accordingly, we hold that the City did not retain its immunity based on the exception in section 101.057(2). See TEX. CIV. PRAC. & REM. CODE ANN. § 101.057(2) ; Delaney , 835 S.W.2d at 59-60.
The City also argues that it retains its immunity based on the TTCA's exception for police protection because the gravamen of the Nicolais' claim is that Officer Gonzales was negligent in providing police protection. See TEX. CIV. PRAC. & REM. CODE ANN. § 101.055(3).
Section 101.055(3) provides: "This chapter does not apply to a claim arising ... from the failure to provide or the method of providing police ... protection." See id. The exception applies to "governmental decisions as to how to provide police ... protection." Terrell , 588 S.W.2d at 788 ; Tex. Dep't of Pub. Safety v. Salmeron , No. 14-94-00534-CV, 1995 WL 529191, at *4 (Tex. App.-Houston [14th Dist.] Sept. 7, 1995, writ denied) (not designated for publication) ("The method of performing an act refers to the governmental decision or plan for providing police or fire protection."). The purpose of the exception is to "avoid judicial review of the discretionary policy decisions that governments must make in deciding how much, if any," protection to provide. See Terrell , 588 S.W.2d at 786-87. Although a governmental entity is immune from liability for a negligent formulation of policy, a negligent implementation of policy can subject the entity to liability. Id. at 787-88 ; see also Stephen F. Austin State Univ. , 228 S.W.3d at 657.
The Nicolais, as discussed above, do not assert that the City was negligent in the formulation of a policy related to police protection. Rather, the Nicolais assert that Officer Gonzales was negligent in carrying out the City's policy requiring that passengers in patrol cars be secured with seat belts. Thus, section 101.055(3) is inapplicable. See Terrell , 588 S.W.2d at 788. We hold that the City did not retain its immunity based on the exception in section 101.055(3).
Accordingly, we further hold that the trial court did not err in denying the City's plea to the jurisdiction.[12]
Conclusion
We affirm the trial court's order denying the City's plea to the jurisdiction.

See Tex. Civ. Prac. & Rem Code Ann. § 51.014(a)(8) (Vernon Supp. 2016) (authorizing interlocutory appeal from order denying plea to jurisdiction by governmental unit).

See ion index="115" url="https://cite.case.law/citations/?q=Tex.%20Code%20Ann.%20%C2%A7%20101.001">id. §§ 71.001, 71.004 (Vernon 2008).

Although the City, in its appellate brief, presents six issues, each, in substance, is a subpart of its general issue that the trial court erred in denying its plea to the jurisdiction.

See Tex. Civ. Prac. & Rem. Code Ann. § 101.001 -.109 (Vernon 2011 & Supp. 2016).

See itation index="117" url="https://cite.case.law/citations/?q=Tex.%20Code%20Ann.%20%C2%A7%20101.001">id. § 101.021(1).

See id. § 101.021(2).

See id. § 101.0215(a)(1).

See id. § 101.057(2).

See id. § 101.055(3).

The TTCA waives a governmental entity's immunity from suit on all claims for which it waives immunity from liability. See Tex. Civ. Prac. & Rem. Code Ann. § 101.025 ; City of Deer Park v. Ibarra , No. 01-10-00490-CV, 2011 WL 3820798, at *8 (Tex. App.-Houston [1st Dist.] Aug. 25, 2011, no pet.) (mem. op.).

Because the City challenges the existence of jurisdictional facts, we consider the relevant evidence submitted by the parties. See Bland Indep. Sch. Dist. v. Blue , 34 S.W.3d 547, 555 (Tex. 2000). We consider evidence as necessary to resolve the dispute over the jurisdictional facts, even if the evidence "implicates both the subject matter jurisdiction of the court and the merits of the case." See Tex. Dep't of Parks & Wildlife v. Miranda , 133 S.W.3d 217, 226 (Tex. 2004).

Having held that the trial court's order denying the City's plea to the jurisdiction is supported under TTCA section 101.021, we do not reach the remaining portions of the City's issue, in which it challenges the trial court's order denying its plea to the jurisdiction on other grounds. See Tex. Civ. Prac. & Rem. Code Ann. § 101.021.