**Dissenting Opinion issued March 31, 2022**



In The

# Court of Appeals

For The

# First District of Texas

_____

## NO. 01-20-00327-CV

_____

**THE CITY OF HOUSTON, Appellant**

**V.**

**FRANK NICOLAI AND DEBORA NICOLAI AS PARENTS OF CAROLINE NICOLAI, DECEASED, Appellees**

---

**On Appeal from the 164th District Court**
**Harris County, Texas**
**Trial Court Case No. 2013-75121**

---

## DISSENTING OPINION

Official immunity requires that a governmental employee be performing a discretionary duty in good faith. The majority concludes that the City conclusively proved both these elements. I conclude that it failed to conclusively prove either.

Officer Gonzales was driving Caroline Nicolai to a sobering center when her patrol vehicle was struck by another vehicle. Officer Gonzales was driving slowly and did not have her emergency siren or lights activated.

Before heading to the sobering center, Officer Gonzales placed handcuffs around Nicolai's wrists, but she did not place a seatbelt around her body to restrain her. The force of the collision threw Nicolai 50 feet from Officer Gonzales's patrol car through the rear window. The investigator assigned to the collision inspected all three of the rear seat belts in the patrol car and found them in the unused position, consistent with Officer Gonzales's answer that she had not buckled Nicolai's seatbelt. Officer Gonzales's seatbelt was extended in the "locked out" position, consistent with her answer to the investigator that she wore her seatbelt.

No one disputes that Nicolai was handcuffed and could not buckle (or unbuckle) her seatbelt herself. And no one disputes that Houston Police Department policy and Texas law required Officer Gonzales to buckle Nicolai's seatbelt. *City of Houston v. Nicolai*, 539 S.W.3d 378, 388 (Tex. App.—Houston [1st Dist.] 2017, pet. denied).[1]

On this record, I conclude that Officer Gonzales was performing a ministerial duty, so official immunity does not insulate her actions from tort

---

[1] The City previously appealed a denial of immunity in part on the theory that the failure to seatbelt Nicolai was neither a cause of the accident nor part of the TTCA waiver of immunity for operation of a motor vehicle. *Nicolai*, 539 S.W.3d at 392. This Court affirmed. *Id*. at 394.

2

liability. I further conclude that the City failed to conclusively prove that any reasonably prudent officer could have determined that not buckling the handcuffed passenger was reasonable. Therefore, the good-faith element has not been satisfied either. Because the majority's approach does not account for the non-emergency nature of Officer Gonzalez's driving at the time of the accident and circumscribes the scope of good-faith analysis, I respectfully dissent.

## I.      Operating a vehicle on ordinary official business is ministerial

The distinction between discretionary and ministerial acts can be narrow because any official act that is ministerial will still require the employee's discretion to execute it. But case law guides our inquiry. Generally, an "officer driving a motor vehicle while on official, non-emergency business is performing a ministerial act." *City of Dallas v. Brooks*, 349 S.W.3d 219, 225 (Tex. App. – Dallas 2011, no pet.) (citing *Woods v. Moody*, 933 S.W.2d 306, 308 (Tex. App.— Houston [14th Dist.] 1996, no writ)); *Garza v. Salvatierra*, 846 S.W.2d 17, 22 (Tex. App.—San Antonio 1992, writ dism'd w.o.j.) (making policy is a discretionary act, carrying out those policy decisions is a ministerial act; driving in a non-emergency situation is a ministerial act). On the other hand, when the officer's operation of a vehicle involves deliberation or the exercise of professional expertise, decision, or judgment, then the manner of driving may become a discretionary act. *City of Houston v. Hatton*, No. 01-11-01068-CV, 2012 WL

3

3528003, at *3 (Tex. App.—Houston [1st Dist.] Aug. 16, 2012, pet. denied) (mem. op.). "Situations where peace officers have been found to have official immunity in the operation of their motor vehicles include, but are not limited to, high-speed chases, investigations, and traffic stops." *Woods*, 933 S.W.2d at 308. There is no suggestion that transporting Nicolai to the sobering center was an emergency. Merely navigating a vehicle downtown on official business is not a quickly evolving situation requiring fast decisions or training-informed reactions.

The City's argument to transform this ministerial act of driving in a non-emergency situation into a discretionary act is that we should look back in time to the decision that placed Officer Gonzales on that particular street at that particular time. Looking back in time, Officer Gonzales encountered Nicolai in an impaired but compliant condition. As a result, Officer Gonzales had the discretion to transport Nicolai to jail or to a sobering center. The City's argument is that the threshold discretionary decision of where to take Nicolai insulates every mundane, ministerial act that followed. This argument does not find support in the law.

Nicolai's injuries resulted from her not wearing a seatbelt during a collision, not from the earlier discretionary governmental function of deciding whether to take her to jail. *See Boyattia v. Hinojosa*, 18 S.W.3d 729, 734-35 (Tex. App.—Dallas 2000, pet. denied) (concluding that operator of car who was serving court papers in a nonemergency situation could not convert that ministerial function into

4

a discretionary function by pointing to discretionary aspects of serving court papers: "The accident did not occur as a result of the manner in which Hinojosa chose to serve court papers. Instead, it arose out of the manner in which he chose to park his county-owned car."). Failure to seatbelt is relevant to "operati[on] of a motor vehicle." *Nicolai*, 539 S.W.3d at 392. Officer Gonzales did not have discretion to not seatbelt Nicolai under department policy and Texas law. *See Garza v. Harris Cty.*, No. 14-10-00764-CV, 2011 WL 345651, *3 (Tex. App.— Houston [14th Dist.] Feb. 1, 2011, pet. denied) (mem. op.) (where policy did not allow pursuit, choosing to pursue was ministerial act because there was no opportunity to deliberate or decide to pursue; the only choice was to obey orders). Transporting a person is not a discretionary function, nor is seatbelting a passenger. *See id*. at *3–4 (county did not meet its burden to establish that deputy who joined pursuit while transporting a prisoner against department policy was performing a discretionary function). The only discretionary function was the initial decision to transport Nicolai to the sobering center rather than jail, but that discretion had already been exercised and did not affect the performance of the transport.

The majority reasons that an officer's operation of a patrol car can be discretionary when it involves deliberation, exercise of expertise, or judgment. While that may be true, no case has found routine, non-emergency driving to be

5

discretionary. This is because ordinary driving, unlike the pursuit and apprehension of suspects, does not require an officer to perform law enforcement functions involving discretion and judgment that affect how the officer uses her vehicle. *See City of Austin v. Albarran*, No. 03-10-00328-CV, 2011 WL 2533751, at *3–4 (Tex. App.—Austin June 23, 2011, no pet.) (mem. op.).

Absent special circumstances, an officer who causes injury while driving is not entitled to official immunity. *See Harris Cty. v. Gibbons*, 150 S.W.3d 877, 886–87 (Tex. App.—Houston [14th Dist.] 2004, no pet.) (officer's failure to maintain proper lookout and distance that caused accident was separate from action of investigating theft and was not discretionary); *Texas Dep't of Pub. Safety v. Cordes*, 85 S.W.3d 342, 345 (Tex. App.—Austin 2002, no pet.) (officer responding to routine accident report while unsure of route not entitled to official immunity); *City of Wichita Falls v. Norman*, 963 S.W.2d 211, 216–17 (Tex. App.—Fort Worth 1998, pet. dism'd w.o.j.) (officer who caused collision during patrol duties he characterized as involving personal discretion was not shielded by official immunity, even though he chose "which route to follow" as part of non-emergency driving); *Woods v. Moody*, 933 S.W.2d 306, 308 (Tex. App.—Houston [14th Dist.] 1996, no writ) (official immunity did not shield officer who caused collision when his foot slipped off the brake pedal en route to "Harris County business"). The City has not raised any special circumstances here.

6

"If [government actors] were allowed to limit the focus of our inquiry simply to any minor decision requiring some judgment prior to an accident, plaintiffs would find it nearly impossible to make a viable claim under the Texas Tort Claims Act." *Id.* at 308 "Allowing such a limited focus would, in effect, merge the discretionary function element of the official immunity defense into the third element of the defense, whether the employee was acting within the scope of authority." *Id.* An official cannot be immune from liability simply because he is on duty." *Id.*

The majority accepts the City's argument that Officer Gonzales was performing a discretionary duty at the time of the collision because she chose to transport Nicolai to a sobering center instead of jail and her threshold discretionary decision insulates the entire trip. But this approach would create nearly blanket immunity for officers driving on duty, contrary to the TTCA and cases interpreting it.

Consider a typical patrol officer starting her day. The officer is given a geographical area to patrol, but she has discretion in the decision to begin the day patrolling one part of the patrol area and then moving to another part later in the day. Without question, a threshold, discretionary decision is made when the patrol begins. Yet, Texas law indisputably would hold that this patrolling officer was engaged in only a ministerial duty while patrolling her area, absent evidence of an

7

emergency event. The threshold, discretionary decision of where to patrol first does not insulate subsequent driving from tort liability. *See id.* Likewise, Officer Gonzales's initial, threshold determination of where to drive Nicolai should not insulate her later non-emergency, ministerial driving.

The majority dismisses the Nicolais' arguments about the non-discretionary nature of buckling a handcuffed passenger for impermissibly looking back in time to a decision the officer made before starting her drive instead of focusing on the duty the officer was engaged in "when the collision occurred." (Majority op. at 35) But, under the majority's approach, the even earlier-in-time decision of where to go washes over the entire trip to make later events all part of that threshold, discretionary decision. The Nicolais cannot look back in time, but the majority may look even further back. I see no support in the case law for this approach, and I note that the parenthetical the majority offers in advancing it demonstrates the disconnect in the analysis. The majority emphasizes that the "proper inquiry is *whether* [law enforcement officer] was operating his patrol in an emergency situation" but then allows a remote discretionary decision to equate non-emergency driving to a discretionary duty. (Majority op. at 37, quoting *Brooks*, 349 S.W.3d at 226–27). The TTCA waives immunity "when death arises from the operation or use of a motor-driven vehicle." TEX. CIV. PRAC. & REM. CODE § 101.021(1)(A). The majority's approach that allows a threshold, discretionary decision to insulate

8

ministerial driving would remove TTCA immunity waiver —"when death arises from the operation or use of a motor-driven vehicle"—from the statute because, given the nature of the job, all patrol officers make discretionary route determinations before beginning their patrol duties. Yet, we see, repeatedly, that collisions involving patrol officers in non-emergency situations fall within the waiver for ministerial operation of a motor vehicle. The threshold, discretionary determination of where to drive does not transform otherwise ministerial driving into a discretionary act to avoid tort liability.

In *City of Austin v. Albarran*, what would typically be considered a discretionary act—responding to an emergency call—was not conclusively proven to be a discretionary act because the officer responded without emergency lights or siren. *Albarran*, 2011 WL 2533751, at *6. Once the officer decided to respond without full emergency protocols, his decision to operate in a non-emergency manner created a fact issue about whether he was performing a discretionary function when he hit an oncoming car as he turned into the scene. *Id*. The City did not conclusively prove a discretionary act; instead, a fact question existed. As a result, the court of appeals affirmed the trial court's order denying summary judgment on official immunity grounds. *Id*. Under *Albarran*, the City has not conclusively shown that Officer Gonzales was performing a discretionary function when she transported Nicolai to the sobering center.

9

It is not just *Albarran* that undercuts the majority's analysis. None of the cases the majority cites compel the result it reaches.[2] *See, e.g.*, *City of Lancaster v. Chambers*, 883 S.W.2d 650, 655 (Tex. 1994) (high-speed chase was discretionary function); *Brooks*, 349 S.W.3d at 226–27 (responding to call for immediate backup was discretionary function); *Ramos v. Texas Dep't of Pub. Safety*, 35 S.W.3d 723, 729 (Tex. App.—Houston [1st Dist.] 2000, pet. denied) (non-driving officer administering road test and evaluating fitness of driver was performing a discretionary function); *Casas v. Gilliam*, 869 S.W.2d 671, 674 (Tex. App.—San Antonio 1994, no writ) (emergency transport of a gunshot victim where EMT had to decide in the moment which hospital was closest that could provide "appropriate emergency care" was discretionary); *Hatton*, 2012 WL 3528003, at *3 (responding to Priority One call with emergency lights and sirens activated was a discretionary act). None of these cases holds that a single discretionary decision made at one

---

[2] The cluster of cases the majority describes as involving "transportation" by an official do not involve injury during driving. The transportation-of-inmates cases involve injuries sustained while extracting a prisoner from a cell, during a breakdown of transportation, and while unloading prisoners, all of which are discretionary and distinguishable. *Wheelock v. Behrens*, No. 04-01-00312-CV, 2002 WL 112545, at *2 (Tex. App.—San Antonio Jan. 30, 2002, no pet.) (mem. op.) (unloading); *Scott v. Britton*, 16 S.W.3d 173, 178–79 (Tex. App.—Houston [1st Dist.] 2000, no pet.) (bus broke down); *Rinehart v. Britton*, No. 14-99-01076-CV, 2000 WL 1715902, at *3–4 (Tex. App.—Houston [14th Dist.] Nov. 16, 2000, no pet.) (not designated for publication) (same); *Tex. Dep't of Crim. Justice v. Watt*, 949 S.W.2d 561, 565–66 (Tex. App.—Waco 1997, no writ) (extracting aggressive prisoner from cell); *Gonzales v. Kelley*, No. 01-10-00109-CV, 2010 WL 2650615, at *1 (Tex. App.—Houston [1st Dist.] July 1, 2010, no pet.) (mem. op.) (extracting aggressive inmate from cell to behavioral-health unit on a gurney with an officer sitting on him after tasing him).

point in the evening elevates later ordinary driving to a discretionary police function. Yet, that is what the majority holds.

Here, Officer Gonzales was driving at low speed on non-emergency business, which was a ministerial function. Accordingly, in my view, the City did not meet its burden to establish that Officer Gonzales was performing a discretionary function at the time of the collision.

## II. Doing what no reasonable officer would have done, and in the process violating HPD policy and state law, is not good faith

Nor did the City conclusively establish that Officer Gonzales was operating in good faith when she transported Nicolai to the sobering center without her seatbelt fastened. The City had the burden to prove that a reasonably prudent police officer, under the same or similar circumstances, "could have believed [her] actions were justified based on the information [s]he possessed at the time." *Gomez v. City of Houston*, 587 S.W.3d 891, 897 (Tex. App.—Houston [14th Dist.] 2019, pet. denied) (citing *Telthorster v. Tennell*, 92 S.W.3d 457, 465 (Tex. 2002)).

The good-faith standard is not the equivalent of a general negligence test, which addresses what a reasonable person would have done—it is more lenient, giving ample room for mistaken judgments by protecting "all but the plainly incompetent or those who knowingly violate the law." *Chambers*, 883 S.W.2d at 656. In other words, the City need not prove it would have been unreasonable not

to take the actions that Officer Gonzales took or that a reasonable officer would have taken the same actions as her; instead, it is enough to prove that a reasonable officer under the same or similar circumstances *might* have reached the same decision she did. *Id.* at 656–57; *see Tex. Dep't of Pub. Safety v. Rodriguez*, 344 S.W.3d 483, 491 (Tex. App.—Houston [1st Dist.] 2011, no pet.). Even under this lower standard, the City has not met its burden.

None of the City's evidence addresses Officer Gonzales's reasons for not ensuring Nicolai's seatbelt was fastened. Indeed, during the investigation of the accident, Officer Gonzales admitted that Nicolai was not wearing her seatbelt. Yet the City offered no evidence about any need for leaving the seatbelt unbuckled or basis for the decision. Although the official must only show that a reasonable officer, possessing the same information she had at the time, could have believed her conduct was warranted, *Chambers*, 883 S.W.2d at 656, the City has not done that here.

The majority finds good faith, though, by focusing on the threshold, discretionary decision to take Nicolai to the sobering center instead of the jail and asking whether a reasonably prudent officer might have made the same determination. But the cases the majority cites do not compel or even support the conclusion that good faith is measured in terms of a threshold discretionary decision that is far removed from the later motor-vehicle operation and the

12

decision that caused the injury. *See Rodriguez*, 344 S.W.3d at 496 (analyzing good faith in terms of the decision to run red light that caused the injury, not in terms of the earlier discretionary decision to surveil the suspect); *Rivera v. City of Houston*, No. 01-19-00629-CV, 2020 WL 7502054, at *5 (Tex. App.—Houston [1st Dist.] 2020, no pet. h.) (mem. op.) (analyzing officer's good faith in terms of the decision to enter an intersection while typing and not checking whether the light was red or green, not in terms of the earlier discretionary decision to respond to a call); *Galveston Cty. Health Dist. v. Hanley*, No. 01-14-00166-CV, 2014 WL 6853608, at *9 (Tex. App.—Houston [1st Dist.] Dec. 4, 2014, no pet.) (mem. op.) (analyzing good faith of EMS's decision to travel through a red light, not good faith of responding to emergency of an unconscious and unresponsive patient).

Analyzing Officer Gonzales's conduct in terms of whether her earlier decision to transport Nicolai to the sobering center was in good faith elides the cause of Nicolai's injuries. The unit of analysis is Officer Gonzales's failure to buckle Nicolai's seatbelt and operate the vehicle anyway, in violation of HPD policy and state law. It is this failure that caused Nicolai's injuries. Looking only at the good faith of the threshold discretionary act merges the good faith analysis into the other prongs of the official immunity question. There would be no way for an official to be held liable for unwarranted acts committed while on official business. Official immunity does not stretch that far.

13

The majority contends that Officer Gonzales's decision to not buckle Nicolai must be excluded from the good-faith analysis because negligence, and even recklessness, is "immaterial" to an evaluation of good faith. (Majority op. at 46) The majority misapplies the law by following this approach.

I agree that labeling an action by a police officer as *negligent* or *reckless* does not add to a good-faith evaluation because the question is not what a reasonable officer would have done but, instead, the more forgiving question of whether a reasonable officer might have reached the same decision. *Robinson*, 300 S.W.3d at 898. This more lenient standard allows poor decisions to remain within the zone of good faith, so long as some reasonable officer might have done the same thing. The label of negligence adds nothing to the analysis. But applying this law means that we ignore the labels for actions, not that we exclude the underlying acts from our analysis.

Officer Gonzales's decision to not buckle the impaired and handcuffed Nicolai, without question, is rightfully part of our analysis. And if Officer Gonzales acted in a way that no reasonable officer could have believed was warranted, then the test for good faith is not met. *See Telthorster*, 92 S.W.3d at 465.

I conclude that no reasonably prudent officer could have believed that she should transport a handcuffed passenger without buckling her seatbelt for no

14

reason. Because the City has not put forward any evidence to justify the failure to ensure that Nicolai's seatbelt was buckled, as opposed to whether Nicolai should have been transported to the sobering center in the first place, it has not met its burden of proof to establish good faith. *See Wadewitz v. Montgomery*, 951 S.W.2d 464, 467 (Tex. 1997) (officer's summary judgment evidence did not establish good faith where it did not address the degree, likelihood, and obviousness of the risks created by entering a lane of traffic he could not see, not the propriety of responding to a call to investigate a purse snatching); *Martinez v. Harris Cty.*, 526 S.W.3d 557, 564–66 (Tex. App.—Houston [1st Dist.] 2017, no pet.) (analyzing weather and traffic conditions and risks in decision to pursue fleeing suspect who made a sharp right turn onto residential street, not officer's initial decision to join pursuit); *William Marsh Rice Univ. v. Thomas*, No. 01–14–00908–CV, 2015 WL 3522915, at *5 (Tex. App.—Houston [1st Dist.] June 4, 2015, no pet.) (mem. op.) (analyzing good faith in terms of conduct of investigation leading to arrest, not the initial discretionary decision to investigate); *Harris Cty. v. S. Cty. Mut. Ins. Co.*, No. 01–13–00870–CV, 2014 WL 4219472, at *7 (Tex. App.—Houston [1st Dist.] Aug. 26, 2014, no pet.) (mem. op.) (examining whether it was justified to drive 80 mph in a 30-mph rural area, not whether it was good faith to respond to an attempted suicide incident).

Looking at the evidence in the light most favorable to Nicolai, the City has not met its burden of proof to show that Officer Gonzales was engaged in a discretionary act and that her failure to ensure that Nicolai's seat belt was fastened was in good faith. As a result, I would affirm the trial court's denial of summary judgment.

<div style="margin-left: 40%;">
Sarah Beth Landau<br>
Justice
</div>

Panel consists of Chief Justice Radack and Justices Landau and Countiss.

Justice Landau, dissenting.